880

UNITED STATES v. GLORY BLOUSE &
SPORTSWEAR CO., Inc. et al.

No. 101, Docket 20377.

Circuit Court of Appeals, Second Circuit.

Jan. 6, 1947.

Milton Maurice Meyer and Davidoff &
Meyer, all of New York City (Isaac M.
Levinson and Gustave A. de Lemos, both
of New York City, of counsel), for appellants.

Florence P. Shientag, of New York
City, for appellee.

Before L. HAND, AUGUSTUS N.
HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The defendants appeal from a conviction under an indictment in sixteen counts, the first of which was for conspiracy to violate § 925(b) of Title 50 U.S.C.A. War Appendix, i. e., to sell women's blouses at a higher price than that fixed by the maximum price regulations; the next twelve, of which were for selling separate parcels of blouses at higher prices than were permitted; and the last three of which were for failing to keep proper books of record, as required by Maximum Price Regulations No. 287 and No. 330, as revised. The only points urged, which have the least importance, are (1.) that the evidence does not support the verdict; and (2.) that the conduct of the prosecuting attorney made a fair trial impossible. The facts as the jury might have found them from the evidence were as follows. In the year 1942, a corporation—whose shares. were held by three persons, named Mason, Geist and Nazimowitz—was manufacturing women's clothes in the Borough of Manhattan. Its name was Geist Blouse and Sportswear Co. Inc., which on September 26, 1942, was changed to Glory Blouse and Sportswear Company, Inc.: it is the corporate defendant in this proceeding. During the fall of 1942 Geist sold all his shares in the company to Mason; on June 24, 1943, Mason sold all his shares to the defendant, Sicari; and at some time before September 11, 1944, which the record does not disclose, Sicari had acquired Nazimowitz's shares. During the month of October, 1942, Sicari had already become manager of the business; he was getting a salary of $200 a week, and half the net profits; he was guarantying the corporate loans made by the bank where it kept its money; and his son-in-law was its secretary and treasurer. Before April 1, 1943, his signature was being required upon all corporate cheques

by a new bank, to which the corporation had changed its account; and he had begun generally to supervise its purchases at least by the beginning of the year 1943. In March, 1943 the defendant, Onesto (Sicari's "godchild"), and Mason's wife filed a certificate that they would do business as the Jewel Blouse & Sportswear Company; and they in fact did do business, nominally as a jobber for the Glory Company. They had an ostensible office and show room on the same floor of the same building where the Glory Company made the blouses; and, although that company sold to other persons until March, 1944, the Jewel Company was its only jobber thereafter. On June 29th Lazzara (Sicari's brother-in-law) took Mrs. Mason's place, and he and Onesto were the Jewel Blouse & Sportswear Company. All the sales laid in counts two to thirteen inclusive, were made during February, March or April, 1945; and they were all at prices higher than were permissible for the Glory Company.

The defendants argue that the prosecution did not, however, show that these prices were higher than was permissible to the Jewel Company, if that company was a bona fide jobber, and that in fact it was such a jobber. The prosecution met this argument by asserting that the Jewel Company was not a bona fide jobber; but a mere screen or mask by which Sicari sought to evade the regulations which limited the selling prices of the Glory Company. In support of this it proved that Sicari had customarily used the money of the Jewel Company at his pleasure, taking it when and in what amounts he wished, and instructing the bookkeeper to enter his withdrawals as expenses which she should fabricate at her pleasure; and that he often took himself even the salaries due to Onesto and Lazzara. It proved that he told several persons that the Glory and Jewel companies were the same; it proved that Onesto and Lazzara very seldom came to the office; and that from before the beginning of 1945 the blouses were not even shipped from the Jewel premises, but were sent out directly by Glory. In short, it made out a case from which the jury was free to conclude that Sicari had complete and

absolute control over Onesto and Lazzara during the relevant period, if not earlier; that the Jewel Company was a puppet in his hands; and that if he and Mason ever intended it to be anything else, any such intent had disappeared before 1945. In the face of this it became irrelevant, what was the maximum, or "ceiling," price at which the Jewel Company could lawfully have sold if it had been a bona fide jobber; and we need not enter into that question. Seldom does an appeal come to us in which the evidence more abundantly supports a verdict of guilty.

The remaining question is whether the conduct of the attorney for the prosecution made the trial unfair. Usually when this is the objection, the defendants can point to some remarks in summing up, or at the trial, designed to divert the jury from the issues, and to excite their animosity against the accused. These defendants do not, and cannot, point to a syllable of the sort from the beginning to the end of the trial. What they do say is that the prosecution overproved the issues by evidence which, even if relevant in one aspect, in others tended to prove that they had been guilty of other crimes; and that by so doing it unfairly overweighted the case against them. All the evidence did have a rational bearing upon the crime; and it is abundantly settled (indeed the contrary would be preposterous) that relevant evidence does not become incompetent because it incidentally proves that the accused has committed an independent crime. That being so, the objection necessarily resolves itself in a complaint that the prosecutor did not temper the wind to the shorn lamb by moderation in introducing such evidence. This reasoning has a corollary that a prosecutor must desist, when he has made out his case by enough evidence to satisfy the jury, and that it is unfair thereafter to load the case further,—at least, when by so doing he proves that the accused has been guilty of another crime. How a prosecutor is to know when he has satisfied a jury on the main issue, is left to supposition; it is a mystery which the bar would be grateful to have solved. In the case at bar the objection was chiefly that by showing that Sicari used the money

of the Jewel Company as his own, the prosecution unnecessarily proved a crime against that company. That begs the question. If the Jewel Company was a mere fetch or cover, Sicari did no wrong to Onesto and Lazzara, and the evidence proved only the crime charged. One way, and practically the only way, to prove that it was a fetch or cover, was to show that he treated it as his own, by taking its money as he pleased. True, if the proof did not satisfy the jury that his freedom in dealing with it showed that it was a fetch or cover, they might believe that he had been thieving; conceivably they might even convict him for that crime, although they acquitted him of the crime with which he was charged. But that was a possibility inherent in proving the case against him; and it falls within the doctrine we have just mentioned. There would be an end to the punishment of many crimes, if the most cogent proof possible were forbidden, because, in case it did not prove as cogent as the prosecution honestly believed it should, it exposed the accused to the chance of conviction for something with which he had not been charged.

It is not necessary to discuss the convictions under the fourteenth, fifteenth and sixteenth counts.

Convictions affirmed.