Thomas Gordon TINKLE, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

William Moore PEGRAM, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 15880, 15881.

United States Court of Appeals
Eighth Circuit.

April 10, 1958.

**24**

James Lawyer, Des Moines, Iowa, for appellants.

John C. Stevens, Asst. U. S. Atty., Des Moines, Iowa (Roy L. Stephenson, U. S. Atty., Des Moines, Iowa, and Robert J. Spayde, Asst. U. S. Atty., Oskaloosa, Iowa, were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

VOGEL, Circuit Judge.

A grand jury for the Southern District of Iowa returned an indictment in four counts, charging in Count 1 that the appellants, Thomas Gordon Tinkle, Jr., and William Moore Pegram, entered the Shannon City Office of the First State Bank of Diagonal, Iowa, with intent to commit a felony, in violation of § 2113 (a), 18 U.S.C.A. Count 2 charged the same appellants with having taken and carried away certain property, of value in excess of $100.00, belonging to the bank, with intent to steal the same, in violation of § 2113(b), 18 U.S.C.A. Count 3 charged the appellant Pegram and his wife, Latane Pegram, with having transported in interstate commerce stolen securities exceeding $5,000.00 in value, in violation of § 2314, 18 U.S.C.A. Count 4 charged all three with a violation of § 371, 18 U.S.C.A., in that they conspired to violate §§ 2113(a), 2113(b) and 2314, 18 U.S.C.A.

The overt acts supporting the fourth, or conspiracy, count were identical with Counts 1, 2 and 3.

Upon a trial, a jury returned verdicts of guilty as to Thomas Gordon Tinkle, Jr., on Counts 1, 2 and 4; as to William Moore Pegram on Counts 1, 2, 3 and 4. The jury acquitted Mrs. Pegram on Count 3 but returned a verdict of guilty as to Count 4. Mrs. Pegram's appeal was dismissed on her own motion on January 21, 1958.

The first claim of error on behalf of William Moore Pegram is that his rights under the Fifth and Sixth Amendments to the Constitution of the United States were violated in that he was denied the right to be represented by counsel. This contention involves only Pegram and will be examined first. A consideration of the facts and the chronology of events leading up to the trial is essential.

July 9, 1957. All those charged in the indictment were arraigned. Pegram was advised of his Constitutional right to be represented by counsel and of his right to have the court appoint counsel for him. He declined court-appointed counsel and stated:

> "Your Honor, I would like to hire my own counsel when I see time and fit. Not at this present. I have not talked with one. I talked to several, but one in particualr that the District Attorney sent over to me but, *he has other clients in this case.* I would rather hire my own attorney." (Emphasis supplied.)

Pegram waived the right to counsel during the arraignment and entered a plea of not guilty. Upon being advised by the court that he should make prompt arrangements for an attorney, he stated:

> "Well, your honor, I was hoping that my wife would make bond within the next few days. Then I will make bond. Then when I get on the ground where I can talk to someone, well then I will know. Until then I don't know, sir."

The court then set August 6, 1957, as the date for trial.

July 19, 1957. Pegram, still being confined in jail, filed a motion for additional time within which to file motions and to employ counsel, stating that while he had consulted with Mr. Lawyer, that Mr. Lawyer was unable to represent him and that he needed additional time. An extension was granted to July 29th for the filing of motions.

July 26, 1957. No counsel having appeared for Pegram, the court ordered that if he desired court-appointed counsel, he should make his request to the court on or before July 30, 1957.

July 29, 1957. Mr. Theodore Duffield, of Des Moines, Iowa, appeared as counsel for the appellant Pegram and his wife and in their behalf filed a motion for additional time to file motions and for a 180-day postponement of the trial. The court continued the trial date from August 6th to August 12th.

August 9, 1957. On this date Pegram posted a $25,000.00 bond and was released from custody.

August 10 and 11, 1957. Pegram, his wife and their attorney, Mr. Duffield, had what they claim was their first opportunity for a joint conference, at which they discovered a conflict of interest between Pegram and his wife.

August 12, 1957. On the morning of this date, which was the time set for trial, Pegram and his wife made a motion for separate trials and for permission for Duffield, their attorney, to withdraw from the case as attorney for Pegram on the ground that there was a conflict of interest between Pegram and his wife. The record is silent as to what conflict of interest existed between Pegram and his wife, but the trial court promptly granted Duffield permission to withdraw as attorney for Pegram. The motion for separate trials was denied. The court thereupon granted a delay until 1:30 that afternoon for the selection of the jury. Pegram agreed that Mr. Duffield, attorney for his wife, and Mr. Lawyer, attorney for Tinkle, could act for him in the selection of a jury. Thereafter the trial was continued until Wednesday, August 14th, at 9:30 a. m. In explaining the situation to the jury, the court stated:

"Now, we have run into a situation that nobody is to blame for, and we have just run into it. And, that is, you may observe we are waiting for counsel for Mr. Pegram to appear, and we have been confronted with some difficulties. There is no inference to be drawn from that. It is just a situation we run into. I have conferred with counsel. I have informed them that because of the circumstances shown, I will continue the taking of evidence, to start with it on Wednesday morning. I wish to inform counsel we will have to commence on Wednesday morning with it."

August 14, 1957. Upon inquiry from the court, appellant Pegram stated:

"Your Honor, Sir, everyone I have talked to, every attorney, every counsel that I have talked to, they won't take the case, on the grounds that they haven't enough time; and what I am asking for this morning is time to have means to supply—to hire counsel, but I can't hire one that won't come over here, which I have talked to several. They say they haven't time, and not even time to read the indictment. * * *"

Mr. Duffield, attorney for Mrs. Pegram, stated to the court:

*"I am forced to take some of the responsibility for what's happened here,* for this reason—that I originally entered an appearance here, and that just before the first continuance was granted—at that time I assumed that I would be representing both of these defendants, but when Mr. Pegram was released, which was last Friday, the 9th, I believe, and I had an opportunity the following day and the day following that then to talk to them together, it became apparent that I couldn't. And that I so informed the Court, and the Court recognized the problem and released me. *Now, I therefore put Mr. Pegram, I sup-*

*pose, in this position, where he had to rush for an attorney.* And I don't want the Court to think that it was his intentional delay which brought it about, but it is a result of circumstances; and with the knowledge that I have of his case, I understand that there would be a problem of getting an attorney, and that *it is a case which requires some time for preparation."* (Emphasis supplied.)

The court nevertheless directed that the trial proceed, that Pegram have the benefit of any objections he desired and, " * * * because of the situation that if on any of the evidence, that if it was legally objectionable on any ground that it would be assumed on behalf of the defendant Pegram that the proper objection was made, and would be overruled, unless the court directed otherwise."

Pegram objected to the suggestions of the court and objected to proceeding without counsel. The trial thereupon commenced. After the government had examined the first witness, Pegram was asked by the court if he had anything to ask of the witness, to which he replied:

"Yes, sir, I want to state to the Court that I have no education to cross-examine the witness, and I object to being tried without counsel, sir."

At the close of the government's testimony, the court inquired of Pegram if he wished to present evidence, to which he replied:

"Sir, I am without counsel. I have got a defense, but I don't know how to put it on, sir, so I just don't know."

Pegram was found guilty, and thereupon sentenced to 20 years' imprisonment.

▮ It is contended by the appellant Pegram that he has been denied the assistance of counsel for his defense, as guaranteed by the Sixth Amendment to the Constitution, and that he has been deprived of his liberty without due process of law, contrary to the provisions of the Fifth Amendment to the Constitution. Of course, the right to the effective assistance of counsel in his defense is fundamental and may not be taken away or impaired, though it may be waived. It is clear from an examination of the foregoing portions of the record that the appellant Pegram insisted continuously that he wanted counsel, that he was financially able to employ counsel and that he did not want to proceed without counsel. The government takes the position that:

"The real question is not whether the appellant was deprived of his constitutional right to be represented by counsel, but whether the court abused its discretion in refusing to grant further continuances to the appellant. The right to select counsel of one's choice does not carry with it the right to select the time of trial and thus interfere with the orderly dispatch of court business."

The government argues that the granting of a continuance in a criminal trial rests within the sound discretion of the trial court and that a continuance is properly denied where a defendant, having declined court-appointed counsel and having been given an opportunity to obtain counsel, either fails or refuses to do so, citing cases hereinafter referred to. No fault can be found with the government's premise nor the fact that the cases cited properly support the rule stated. Our question is whether the rule is applicable to the fact situation here presented. There is no question here but what the trial judge properly advised Pegram of his Constitutional rights and on at least two occasions suggested that the court appoint counsel for him, that the appellant declined court-appointed counsel, desiring to employ counsel of his own choice, and that he was in a financial position to do so. It is also clear that by July 29, 1957, the appellant had employed Mr. Theodore Duffield as counsel for himself and his wife and that Mr. Duffield filed certain motions in behalf of appellant and his wife. Pegram was admitted to bail on August 9, 1957. In a motion presented to the court on August 12,

1957, it was claimed by attorney Duffield and his clients, Mr. and Mrs. Pegram, that August 10 and 11 was the first time all of the parties had an opportunity of assembling together for free discussion regarding the method of defense and that it thereupon became apparent that there was a conflict of interest between Pegram and his wife. In the interest of having a fair trial for each, attorney Duffield asked permission of the court to withdraw as attorney for Pegram. That permission was granted and the court explained:

"Now we have run into a situation that nobody is to blame for, * *."

Up to such time, then, August 12, 1957, the date set for trial, no situation had been presented where the appellant Pegram had failed or refused to obtain counsel. His employment of attorney Duffield appears to have been in good faith. The claim that the conflict of interests was not known until the meetings of August 10 and 11 is not challenged. The question remaining is whether Pegram was denied the effective assistance of counsel through the drawing of the jury on Monday afternoon and the commencement of trial on Wednesday morning. We think the record clearly establishes that Pegram waived the right to be represented by counsel during the drawing of the jury on Monday afternoon. The record is perfectly clear, however, that he did not waive the right to counsel at the beginning of and during the trial which opened on Wednesday morning. In protest against being forced to trial on Wednesday morning, Pegram claimed that he had made efforts to secure counsel and that every attorney he talked to refused to take the case on the grounds that there was not enough time. Attorney Duffield, then representing Mrs. Pegram only, advised the court that he felt some responsibility for failing to discover the conflict of interests between Pegram and his wife in time to allow Pegram to employ other counsel and he stated to the court:

"* * * and with the knowledge that I have of his case, I understand that there would be a problem getting an attorney, and it is a case which requires some time for preparation."

The case involved four separate charges, one of which was conspiracy. The government used 74 witnesses during the course of the trial. It cannot be said here, as this court said in McLaughlin v. United States, 8 Cir., 1936, 84 F.2d 561, 562, relied on by the government:

"The defendant made no effort to secure other counsel and refused the proffered aid of the court. There was nothing complicated in the nature of the case. The issues were simple, the witnesses few, and the testimony direct and positive."

Nor is our situation comparable to that confronting the Court of Appeals for the Fourth Circuit in Spevak v. United States, 4 Cir., 1946, 158 F.2d 594, 596, certiorari denied 330 U.S. 821, 67 S.Ct. 771, 91 L.Ed. 1272, where it was said:

"Appellants had, in fact, more than a year to get ready; and the record amply supports the view, taken by the judge below in denying further continuance, that they were merely trifling with the court."

The facts here are unlike those presented in Rachmil v. United States, 2 Cir., 1923, 288 F. 782, certiorari denied 262 U.S. 751, 43 S.Ct. 700, 67 L.Ed. 1215, where obviously the defendants and their counsel were completely apprised of the situation and there was ample opportunity to employ other counsel. In Neufield v. United States, 1941, 73 App.D.C. 174, 118 F.2d 375, at page 383, certiorari denied Ruben v. United States, 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199, another case relied upon by the government, the court stated:

"An accused aware of his right to counsel and able to obtain counsel himself cannot over an extended time—in this case from September 21, 1939, until November 15 following, a period of approximately eight weeks—omit to take any steps either towards himself retaining counsel for the trial proper or towards se-

curing an appointment by the court and then—at the moment of commencement of trial—properly complain that unless a continuance is granted in order that he may select counsel he will have been denied the right of choice."

That is not the situation confronting the court here. The case of People v. Gonzales, 1957, 151 Cal.App.2d 112, 311 P.2d 53, also relied on by the government, is likewise not in point. Nor is United States v. Mitchell, 2 Cir., 1943, 137 F.2d 1006, 1010, affirmed on rehearing 2 Cir., 138 F.2d 831, certiorari denied 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083.

Appellant cannot be charged with delaying tactics in the employment of counsel prior to August 12, 1957. He had counsel up to that time, whereupon such counsel was permitted by court order to withdraw, leaving him unrepresented. Nevertheless, the immediate drawing of a jury was ordered and he was forced to go to trial on the morning of August 14th. He accordingly had what remained of Monday afternoon after drawing the jury and all day Tuesday within which to employ counsel and for counsel to prepare for trial. Clearly, the decision of Binder v. United States, 6 Cir., 1956, 231 F.2d 314, certiorari denied 351 U.S. 969, 76 S. Ct. 1036, 100 L.Ed. 1488, also cited by the government, is not applicable.

The zeal with which Constitutional rights are to be guarded is well illustrated by the Supreme Court in the case of Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, where the defendant Glasser had, as the appellant Pegram had here, insisted on having his own lawyer representing him alone. The trial court had nevertheless appointed such lawyer to represent a co-defendant as well. In finding that Glasser, who incidentally was a lawyer himself, had had his Constitutional rights violated, the Supreme Court stated, 315 U.S. at page 69, 62 S.Ct. at page 464:

"The guarantees of the Bill of Rights are the protecting bulwarks against the reach of arbitrary power. Among those guarantees is the right granted by the Sixth Amendment to an accused in a criminal proceeding in a federal court 'to have the assistance of counsel for his defense.' 'This is one of the safeguards deemed necessary to insure fundamental human rights of life and liberty, and a federal court cannot constitutionally deprive an accused, whose life or liberty is at stake, of the assistance of counsel. Johnson v. Zerbst, 304 U.S. 458, 462, 463 [58 S.Ct. 1019, 1022, 82 L.Ed. 1461]. Even as we have held that *the right to the assistance of counsel is so fundamental that the denial by a state court of a reasonable time to allow the selection of counsel of one's own choosing,* and the failure of that court to make an effective appointment of counsel, *may so offend our concept of the basic requirements of a fair hearing as to amount to a denial of due process of law contrary to the Fourteenth Amendment,* Powell v. Alabama, 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158] so are we clear that the 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. If the right to the assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired.

"To preserve the protection of the Bill of Rights for hard-pressed defendants, *we indulge every reasonable presumption against the waiver of fundamental rights.* Aetna Insurance Co. v. Kennedy, 301 U.S. 389 [57 S.Ct. 809, 81 L.Ed. 1177]; Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292 [57 S.Ct. 724, 81 L.Ed. 1093]." (Emphasis supplied.)

At pages 75 and 76 of 315 U.S., at page 467 of 62 S.Ct.:

"To determine the precise degree of prejudice sustained by Glasser as

a result of the court's appointment of Stewart as counsel for Kretske is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial. Cf. Snyder v. Massachusetts, 291 U.S. 97, 116 [54 S.Ct. 330, 336, 78 L.Ed. 674]; Tumey v. Ohio, 273 U.S. 510, 535 [47 S. Ct. 437, 445, 71 L.Ed. 749]; Patton v. United States, 281 U.S. 276, 292 [50 S.Ct. 253, 256, 74 L.Ed. 854]. And see McCandless v. United States, 298 U.S. 342, 347 [56 S. Ct. 764, 766, 80 L.Ed. 1205]. * * * In conspiracy cases, where the liberal rules of evidence and the wide latitude accorded the prosecution may, and sometimes do, operate unfairly against an individual defendant, it is especially important that he be given the benefit of the undivided assistance of his counsel without the court's becoming a party to encumbering that assistance."

Undoubtedly the trial court here was correct in granting Duffield's motion to withdraw as counsel for Pegram. Thereafter Pegram should have been given a reasonable length of time within which to employ counsel and for counsel to prepare for trial. We think that the allowance of less than a day and a half to employ counsel and for counsel to prepare for trial in a criminal case involving four charges, (one of which was that of conspiracy) in which the government used 74 witnesses and which was described by counsel for a co-defendant as " * * * a case which requires some time for preparation", was unreasonable and amounted to a denial to Pegram of the right to be represented by counsel.

Suggestion is made that delay would have been costly and disturbing to the government. There is no question but what delay would have been expensive, but Constitutional rights are not measured by the cost of prosecution. The trial court's ruling that all proper ob-

jections would be deemed taken and overruled unless otherwise noted is no answer to appellant's claimed denial of assistance of counsel. The fundamental character of an accused's right to effective assistance of counsel in federal court implicitly negatives the substitution of the trial judge for such counsel. See Powell v. Alabama, 1932, 287 U.S. 45, 63, 53 S.Ct. 55, 77 L.Ed. 158, footnote. We think the circumstances force the conclusion that Pegram was denied his Constitutional right "to have the assistance of counsel for his defence". Amendment VI, U. S. Constitution.

■ The appellant Tinkle, in collaboration with Pegram, claims that the court erred in admitting into evidence Exhibits 21I, 26B, 26B1, 26C, 26C–1 and testimony in connection with the Producers Savings Bank of Green Mountain, Iowa. Exhibits 21I, 26B and 26C were travelers checks stolen from the Producers Savings Bank, Green Mountain, Iowa. Exhibits 26B1 and 26C–1 were signed registration cards from motels in California. These checks and registration cards were signed in the name of "Brady Laman". A handwriting expert testified to the opinion that all of the "Brady Laman" signatures were written by the same individual. Testimony of the managers of the involved California motels identified the appellant William Moore Pegram as the individual who signed the name "Brady Laman" on some of the travelers checks.

It was the contention of the appellants that the exhibits tended to establish the commission of a crime connected with the Producers Savings Bank of Green Mountain, Iowa, which crime was not alleged in the indictments, and that this constituted error. The exhibits in question were pertinent in connection with the charge of transporting stolen securities in interstate commerce and were also used by the government to establish known specimens of Pegram's handwriting for the purpose of comparison with handwriting on stolen travelers checks. That they show that another crime had been committed is no justification for

their exclusion. Even if the evidence objected to had established that the accused herein had committed another crime, it would not by reason thereof have become incompetent. As stated by Judge Learned Hand in United States v. Glory Blouse & Sportswear Co., 2 Cir., 1947, 158 F.2d 880, 881:

"\* \* \* it is abundantly settled (indeed the contrary would be preposterous) that relevant evidence does not become incompetent because it incidentally proves that the accused has committed an independent crime."

See Hardy v. United States, 8 Cir., 1952, 199 F.2d 704, 707.

The case of Thomas Gordon Tinkle, Jr., is in all things affirmed. As to William Moore Pegram, the case is reversed and remanded for a new trial.