**Donald Kilsmuth HESS and Louis Clifton Hess, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 15832.**

United States Court of Appeals
Eighth Circuit.
April 11, 1958.

Louis Clifton Hess and Donald Kilsmuth Hess, pro se.

Edward L. Scheufler, U. S. Atty., and Kenneth C. West, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before SANBORN, WOODROUGH, and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

Donald Kilsmuth Hess and Louis Clifton Hess appeal to this Court from a judgment of conviction rendered on December 14, 1956, in the United States District Court for the Western District of Missouri, on a jury verdict finding them guilty under an indictment charging a violation of Title 18 U.S.C. § 1201. More precisely, the indictment charged that on November 14, 1956, appellants did unlawfully, knowingly, wilfully, and feloniously transport in interstate commerce from Merriam, Johnson County, Kansas, to Kansas City, Jackson County, Missouri, in the Western Division of the Western District of Missouri, Samuel E. Cashman and Betty Jean Annis, who

had theretofore been unlawfully seized, confined, kidnapped, abducted and carried away and held for ransom, reward and otherwise, and that said Cashman and Annis were thereafter liberated unharmed. Each appellant was sentenced to imprisonment for the rest of his natural life.

Appellants are the same Donald Kilsmuth Hess and Louis Clifton Hess, found guilty of another kidnapping charge, being case of Hess v. United States, No. 15,831, 8 Cir., 254 F.2d 578.

The case had its origin in this state of facts: Samuel E. Cashman was the Principal of South Park Elementary School of Merriam, Johnson County, Kansas, and Mrs. Betty Jean Annis was the fifth grade teacher in that school. On the evening of November 14, 1956, after attending a parent and teacher conference at said school, Mr. Cashman took Mrs. Annis to her home at 6121 Grandview, Merriam, Kansas, in Cashman's automobile. Cashman testified that when he stopped on the driveway of the Annis home, they were almost immediately accosted by two men, one of whom came up to Cashman's side of the automobile, the other on the right side. In response to a command to "Get out of that car," Cashman got out, but then the other man hollered, "Keep them in there. Make them drive us." Cashman re-entered the car under the driver's wheel. The man on his side had a shotgun and got in the back seat of the automobile. Mrs. Annis, according to testimony given by her and Cashman, was ordered out of the automobile, then told to get back in, and the other man sat at her right in the front seat. Cashman was told to try to miss any road blocks, and to take the men to the Greyhound Bus Depot. Cashman testified further that when the men got in the car they seemed to have difficulty in getting their breath, that they were coughing and spitting; that upon their demand, he gave the men his billfold, from which they extracted a dollar bill and then threw the billfold in the back of his car where he later recovered it. In accord-

ance with the command from one of the men, said by Mrs. Annis to be Louis Clifton Hess, Cashman drove down Highway 50, across the state line, and into Missouri; that shortly after crossing into Missouri, and as they approached Pembroke-Country Day School, the men discussed throwing away the shotgun; that one of them said, "We will get rid of this shotgun. That will leave us with the pistol"; that shortly thereafter, Cashman was ordered to drive close to the right curb, and then he heard the glass window in the right rear door being lowered. In this regard, Mrs. Annis stated she heard the shotgun hit the ground when it was thrown out of the automobile. She and Cashman stated that the man in the front seat was bleeding from a head wound and that he was using some white rags to wipe the blood from the wound. Mrs. Annis testified at one time Donald Hess stated that he would shoot Cashman and her if they did not take the men where they wanted to go. Cashman drove down the Southwest Trafficway in Kansas City to a point about one block past McGee and two blocks north of Twelfth Street, where he was directed to stop, and where the men got out of the automobile. Thereafter, Cashman went out Broadway to the Ambassador Hotel, from where he telephoned the Chief of Police of Merriam, Kansas, and reported the incident. Cashman and Mrs. Annis testified that the next day they were able to, and did, identify appellants at a "line-up" held at the Kansas City, Missouri, Police Department as their abductors, and they also were positive in identifying appellants at the trial as the men who had abducted them on the night in question.

After Mrs. Annis had returned to her home following the kidnapping episode, a deputy sheriff of Johnson County, Kansas, picked her up and took her to the Kansas City, Missouri, Police Department. He testified that en route he stopped at a place about 1,000 yards east of the state line, and, in Missouri, where, in accordance with directions from Mrs. Annis, the officer recovered a Winchester .16 gauge shotgun (Government Exhibit 1), which was loaded at the time, with one shell in the chamber and two in the cylinder.

Another deputy sheriff of the same county testified that he examined Mr. Cashman's 1956 Pontiac automobile about 11:00 p. m. on November 14, 1956; he found a pair of gloves bearing a red substance resembling blood, and Government Exhibit No. 5, a bloody rag, on the floorboard of the automobile. And a police detective of the Kansas City Police Department stated he recovered seven .16 gauge No. 4 shot, shotgun shells from the back of the Cashman automobile.

The record demonstrates that George H. Nelson, a high school student, had worked part time at Smitty's Bait and Fly Company, 920 S. Seventh Street, Kansas City, Kansas. This young man testified that on November 14, 1956, he worked from 4 p. m. to 9 p. m., and that on that day he was held up and robbed of a shotgun. Through some water marks on the gun, and by serial number 1307-767, which appeared in the ledger kept in the regular course of business of his employer, this witness identified Government Exhibit No. 1, the Winchester .16 gauge pump Model 12, as the shotgun that was taken from him in the holdup. Nelson unequivocally identified appellant Donald Kilsmuth Hess as the man who took the gun and a box of .12 gauge No. 4 shotgun shells from him in the robbery.

By another witness, who was a salesman for Western Auto Store in Mission, Kansas, it was established that between 8 and 9 p. m. on November 14, 1956, Donald Kilsmuth Hess purchased a box of .16 gauge shotgun shells.

Special Agent Finis Sims, Federal Bureau of Investigation, testified that, armed with a warrant, he and other officers arrested appellants at room 208 of the Blackstone Hotel, Kansas City, Missouri, about 10:30 a. m., on November 15, 1956. That Louis Clifton Hess had

a bandage around his head similar to a towel or pillow case, and stated that he had caught a slug or glass the night before.

Appellants offered no evidence in their behalf.

The brief filed by appellants in this Court in case No. 15,831, Hess v. United States of America, was also filed as their brief in this action. Thus the points presented in the instant case are identical to those raised on appeal in No. 15,-831, which were disposed of adversely to appellants in that case. The contentions, (1) that appellants were illegally arrested, and (2) that the court improperly and erroneously permitted certain exhibits to be received in evidence, fully considered in Case No. 15,831, have no place in this case and are wholly without merit. The evidence established that the arresting officers had a warrant for the arrest of both appellants; and there were no exhibits offered or received in evidence, which had been recovered through a search made in connection with or immediately following the arrest.

■■ Appellants do make one point which merits attention and consideration. They contend that they were deprived of a fair trial because the court permitted evidence to be offered of the commission of another offense. While appellants fail to pinpoint the evidence complained of, we assume they refer to the testimony of witness George H. Nelson relating to the holdup of Smitty's Bait and Fly Shop, in which Donald Kilsmuth Hess took the shotgun and shells. In this connection, we observe that the court was careful to inform the jury at the time the testimony was given, that it was to be considered only for the purpose of identifying the shotgun used in the kidnapping; and in his charge, the jury was specifically instructed that the evidence relating to the Smitty's Bait and Fly Shop "should not in any way influence you in determining the guilt or the innocence of these men, these defendants * * *," and that the testimony was admitted for the purpose of identifying the shotgun. But even without the admonition, we entertain the view that error did not result from admission of the claimed prejudicial testimony. For, it is firmly established that the rule excluding evidence offered to prove that the defendant has committed other offenses than the one charged does not apply to evidence which is relevant and competent to prove the charge against the defendant on which he is being tried. In Hardy v. United States, 8 Cir., 199 F.2d 704, 707, this Court stated:

"Thus, it has repeatedly been held that the rule will not be given application to exclude evidence which may incidentally show arrest, incarceration or conviction for some other offense, but which has relevancy and competency otherwise, and which the trial court responsibly deems a necessary or not inappropriate means in the particular situation of establishing some material fact or aspect of the prosecution's case. See e.g. Hilliard v. United States, 4 Cir., 121 F.2d 992, 997; Devoe v. United States, 8 Cir., 103 F.2d 584, 585, 588."

And, in Smith v. United States, 8 Cir., 236 F.2d 260, 267, certiorari denied, 352 U.S. 909, 77 S.Ct. 148, 1 L.Ed.2d 118, rehearing denied, 353 U.S. 989, 77 S.Ct. 1280, 1 L.Ed.2d 1147, we said:

"Certainly, otherwise relevant evidence does not become incompetent because it incidentally proves commission of independent offenses. Hardy v. United States, 8 Cir., 1952, 199 F.2d 704; Bram v. United States, 8 Cir., 1955, 226 F.2d 858. The exclusionary rule that prior offenses are not admissible against a defendant is not one of unbending rigidity. Thus, the rule will not be given application where the evidence is used to establish some material aspect of the prosecution's case."

See also, Schwartz v. United States, 9 Cir., 160 F.2d 718, 720, 721, and Bram v. United States, 8 Cir., 226 F.2d 858, 863.

We hold that the evidence complained of was relevant and competent to prove and establish a material fact or aspect of the offense for which appellants were being tried, and consequently, the court cannot be convicted of error in admitting such evidence.

The remaining points and contentions urged by appellants were fully considered and disposed of in our opinion in Hess v. United States, No. 15,831. Nothing appears from the instant record requiring further consideration of or elaboration on what was there said. Such contentions must be and are ruled against appellants in this case.

From a careful examination of the entire record, it is our conclusion that no errors of law affecting the substantial rights of the defendants occurred during the trial, and consequently, the appellants are not entitled to have the conviction set aside.

The judgment appealed from is affirmed.