George **MERCER**, Appellant,

v.

Bill **ARMONTROUT**, Warden, Missouri State Penitentiary, Appellee.

No. 86–2593.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1988.

Decided April 21, 1988.

Rehearing and Rehearing En Banc Denied June 13, 1988.

Douglas S. Laird, Kansas City, Mo., for appellant.

John M. Morris, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before LAY, Chief Judge, McMILLIAN and ARNOLD, Circuit Judges.

LAY, Chief Judge.

George Mercer was found guilty of capital murder under Mo.Rev.Stat. § 565.001 (1978)[1] and sentenced to death after a five-day jury trial. On appeal the judgment of conviction was affirmed. *State v. Mercer*, 618 S.W.2d 1 (Mo.), *cert. denied*, 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981).

Following his conviction, Mercer filed a petition for a writ of habeas corpus in the federal district court. After the matter was remanded to the state for further proceedings, Mercer renewed his petition in the federal district court.[2] The district court ultimately denied Mercer's petition for habeas relief. 643 F.Supp. 1021 (1986). Mercer now appeals to this court and seeks habeas relief on three grounds: (1) insufficiency of the evidence showing aggravating circumstances under Missouri law; (2) improper selection of the jury; and (3) admission into evidence of a prior prosecution for rape. We affirm the denial of the issuance of a writ of habeas corpus.

## BACKGROUND

The evidence established that George "Tiny" Mercer was drinking with several friends at the Blue Seven Lounge in Grandview, Missouri. Karen Keeton, the decedent, was a waitress at the Blue Seven Lounge and Mercer mentioned to his friends that he'd like to have sexual intercourse with Keeton that evening. One of Mercer's friends, Stephen Gardner, knew Keeton and persuaded her to leave the lounge with him. Later that night, Gardner brought Keeton to Mercer's home. After being raped by Mercer and Gardner, Keeton was forced at gunpoint to perform fellatio on David Gee. Thereafter, Mercer twice asked Steve Gardner what to do with her, and Gardner instructed Mercer both times to kill her. Mercer then straddled Keeton's body and choked her to death with his hands.

After strangling Keeton, Mercer put her body in the back of John Campbell's pickup truck and ordered Campbell to drive. At some point Mercer ordered the truck stopped, dragged Keeton's body out of the truck, and hid it off to the side of the road. As he returned from discarding Keeton's body, Mercer remarked to Campbell that if he had killed "that leaky cunt 17–year–old like I did her * * * I wouldn't've been on any rape charges and things I'm on right now." At the time Mercer was found to have raped and murdered Keeton, Mercer was also being prosecuted for the rape of Debbie Middleton.

## I. Agency as an Aggravating Factor

One of the two aggravating factors the jury relied upon in sentencing Mercer to death was "agency," i.e., that Mercer was acting at the direction of Gardner. Mo. Rev.Stat. § 565.012.2(6) (1978).[3] Agency is considered an aggravating factor under Missouri law because such a killing is not done out of passion or rage. A murder committed as another's agent or employee is often motivated solely by money or loyalty. *See, State v. Mercer*, 618 S.W.2d at 14 (Bardgett, C.J., dissenting) and *id.* at 18 (Seiler, J., dissenting). Mercer argues that agency was not established. Mercer also argues that because agency was not estab-

---

1. This statute has been repealed by L.1983, S.B. Mo. 276, p. 922, § 1 (1986).

2. The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

3. Repealed by L.1983, S.B. No. 276, p. 923, § 1, and replaced by Mo.Rev.Stat. § 565.032.2(6) (1986).

lished, one of the two aggravating factors used is now invalid and, therefore, his death sentence must be overturned.[4] We disagree.

■ The jury had before it evidence that Mercer turned twice to Gardner and asked him what to do with Keeton. After Gardner instructed Mercer to murder Keeton, Mercer strangled her. The jury also had before it evidence that Gardner, Gee, and Mercer worked together at Industrial Roofing where Gardner was a foreman. After considering this evidence, the jury found Mercer acted as Gardner's agent. The Missouri Supreme Court affirmed the jury's findings. *Id.* at 11. This court must presume that the state court's findings are correct. *Sumner v. Mata,* 455 U.S. 591, 597–98, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982); 28 U.S.C. § 2254(d) (1982). Furthermore, Mercer has not introduced convincing evidence to establish that the jury's factual determination was clearly erroneous. *Rowe v. Lockhart,* 736 F.2d 457, 460 (8th Cir.1984).

Mercer now asserts, however, that the brief conversation he had with Gardner is insufficient to establish an agency relationship as a matter of law. Mercer cites no authority for this proposition. Aggravating factors are not constitutionally invalid so long as there is a factual basis for them, and so long as the aggravating factors channel the jury's discretion. *Zant v. Stephens,* 462 U.S. 862, 876–77, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983). We agree with the district court that the jury permissibly could have found agency.[5]

■ While we do not disturb the jury's finding of agency as an aggravating factor, Mo.Rev.Stat. § 565.012.2(6), Mercer's argument on the issue of agency also fails because there remains an unchallenged aggravating factor. As a matter of state law, where at least two aggravating circumstances are found, the failure of one does not mandate reversal or resentencing. Under Missouri law, when a "jury finds two or more aggravating circumstances, 'the failure of one circumstance does not taint the proceedings so as to invalidate the other aggravating circumstance[s] found and the sentence of death thereon.'" *State v. Malone,* 694 S.W.2d 723, 728 (Mo. 1985) (quoting *State v. LaRette,* 648 S.W. 2d 96, 102 (Mo.), *cert. denied,* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983)), *cert. denied,* 476 U.S. 1165, 106 S.Ct. 2292, 90 L.Ed.2d 733 (1986); *see also State v. Gilmore,* 697 S.W.2d 172, 176 (Mo.1985) ("Where two or more statutory aggravating circumstances are found by the jury, failure of one circumstance does not invalidate the other."), *cert. denied,* 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986). In view of the ample state law authority cited above, the Missouri Supreme Court was justified in holding that the failure of one of two aggravating circumstances does not require reversal. *State v. Mercer,* 618 S.W.2d at 10 n. 5.

Moreover, in *Barclay v. Florida,* 463 U.S. 939, 958, 103 S.Ct. 3418, 3429, 77 L.Ed. 2d 1134 (1983), the Supreme Court held that, as a matter of constitutional law, improper consideration of an aggravating factor may constitute only harmless error. The Court wrote: "There is no reason why the [state supreme court] cannot examine the balance struck by the trial judge and decide that the elimination of improperly considered aggravating circumstances could not possibly affect the balance." *Id.*

Likewise, in *Zant v. Stephens,* 462 U.S. at 891, 103 S.Ct. at 2750, the Court upheld a death sentence even though one of the three aggravating factors was held invalid. The Court observed that imposition of capi-

---

4. The two aggravating factors were Mo.Rev.Stat. § 565.012.2(7) Depravity of Mind ("the offense was outrageously or wantonly vile, horrible or inhuman in that it involved torture, or depravity of mind") and § 565.012.2(6) Murder as an Agent ("[t]he offender caused or directed another to commit murder or committed capital murder as an agent or employee of another person").

5. Mercer does not challenge here the jury's finding that the murder was depraved. While he challenged the use of the depravity factor in the district court, he has not renewed his challenge on appeal. Accordingly, we consider only whether agency could have been found by the jury.

tal punishment is constitutional so long as the aggravating circumstances relied upon genuinely narrow the class eligible for the death penalty. *Id.* at 877, 103 S.Ct. at 2742. Despite the invalid aggravating circumstances, the jury made an *"individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Id.* at 879, 103 S.Ct. at 2744. In addition, the state supreme court reviewed the death sentence and held that it was neither arbitrary, excessive, nor disproportionate. *Id.* at 879–80, 103 S.Ct. at 2743–44. In the instant case, the Missouri Supreme Court has reviewed the sentence and found that application of the death penalty "was not imposed under the influence of passion, prejudice or any other arbitrary factor." *State v. Mercer,* 618 S.W.2d at 10. Furthermore, the use of agency as an aggravating factor narrows the class eligible for the death penalty. We agree, therefore, with the district court's decision to leave the finding of agency undisturbed.

## II. Jury Selection

█ A prospective juror who categorically believes that death is never an appropriate penalty can be disqualified for cause because such a juror will not follow the trial court's instructions. *Wainwright v. Witt,* 469 U.S. 412, 433, 105 S.Ct. 844, 856, 83 L.Ed.2d 841 (1985). While recognizing that jurors who state unequivocally that

they are opposed to the death penalty can be removed for cause, Mercer argues that jurors who, due to their religious beliefs, merely equivocate on the issue of their ability to follow the court's instructions cannot be discharged. *Witherspoon v. Illinois,* 391 U.S. 510, 522–23, 88 S.Ct. 1770, 1776–77, 20 L.Ed.2d 776 (1968). Mercer argues that venire member Bumgarner, who was disqualified for cause, never stated that he would ignore the court's instructions, but rather that he was fundamentally opposed to the death penalty.[6]

The Supreme Court noted in *Witherspoon* that a trial court is permitted to strike all jurors who indicate:

(1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt.* Nor does the decision in this case affect the validity of any sentence *other* than one of death. Nor, finally, does today's holding render invalid the *conviction,* as opposed to the *sentence,* in this or any other case.

*Witherspoon v. Illinois,* 391 U.S. at 522–23 n. 21, 88 S.Ct. at 1777 n. 21 (emphasis in original).

---

6. The following exchange between Mr. Hamilton (prosecutor), Messrs. Fiorella and Lozano (defense attorneys), the court, and Mr. Bumgarner is at issue:

Q [By Mr. Hamilton]. Mr Bumgarner, this is a charge of capital murder, which means that it does carry the possibility of capital punishment, or the death sentence. My inquiry is directed to find out what your attitude is toward capital punishment. If, during the trial of this case the facts and circumstances were developed that in fact the jury could consider capital punishment, would you, as a juror, consider capital punishment as a possible alternative?
A [By Mr. Bumgarner]. I don't think so.
Q. Are you morally and religiously opposed to capital punishment?
A. Yes.
Q. And you feel you couldn't bring back a sentence of—the death sentence under any circumstances?

A. I don't think so.
Q. So regardless of how severe and aggravated the circumstances are, you don't feel that you could bring back a death penalty?
A. I don't believe I could.
MR. HAMILTON: Thank you, sir. I have no other questions.
MR. FIORELLA: We would have no questions of Mr. Bumgarner.
(Venireman excused.)
THE COURT: Any challenge for cause against Harry Bumgarner?
MR. HAMILTON: The state challenges him for cause.
MR. LOZANO: Our position on the previous grounds, Judge.
THE COURT: The state's challenge of Harry Bumgarner for cause is granted. He will be excused for cause.
Tr. at 169–70.

The Supreme Court, however, held later that less extreme jurors could also be removed for cause. *Wainwright v. Witt,* 469 U.S. at 424–26, 105 S.Ct. at 852–53. In *Witt,* Johnny Paul Witt was sentenced to death for murdering an eleven-year-old boy. The conviction and death sentence were overturned by the court of appeals because potential juror Colby was removed for cause. Colby had engaged in the following colloquy with the prosecutor:

"[Q. Prosecutor:] Now, let me ask you a question, ma'am. Do you have any religious beliefs or personal beliefs against the death penalty?

"[A. Colby:] I am afraid personally but not—

"[Q]: Speak up, please.

"[A]: I am afraid of being a little personal, but definitely not religious.

"[Q]: Now, would that interfere with you sitting as a juror in this case?

"[A]: I am afraid it would.

"[Q]: You are afraid it would?

"[A]: Yes, Sir.

"[Q]: Would it interfere with judging the guilt or innocence of the Defendant in this case?

"[A]: I think so.

"[Q]: You think it would.

"[A]: I think it would.

"[Q]: Your honor, I would move for cause at this point.

"THE COURT: All right. Step down." Tr. 266–67.

469 U.S. at 415–16, 105 S.Ct. at 848.

In deciding *Witt,* the Court reaffirmed its holding in *Witherspoon* and stated that, as a practical matter, prospective jurors simply cannot be questioned adequately to establish unmistakably whether they could vote for the death penalty. *Witt,* 469 U.S. at 425, 105 S.Ct. at 852. Nonetheless, the trial court, who is able to observe the visage and demeanor of the prospective juror, may conclude that the juror will be unable "to faithfully and impartially apply the law." *Id.* at 426, 105 S.Ct. at 853. Thus, a trial court that dismisses a prospective juror because that juror will not follow instructions on the imposition of the death penalty may not be reversed by an appellate court absent clear and convincing evidence that the trial court erred. *Id.* at 435, 105 S.Ct. at 857; 28 U.S.C. § 2254.

Mercer alleges that the district court committed reversible error by failing to inquire whether juror Bumgarner could follow the law despite his personal views. The Missouri Supreme Court, however, found that Bumgarner's response was unequivocal; he could not impose the death penalty or at least would be substantially impaired in doing so. *State v. Mercer,* 618 S.W.2d at 7. The district court found no basis for overturning that factual finding. We agree with the district court.

### III. Introduction of Prior Arrest

After Mercer strangled Keeton to death, he put her body in the back of John Campbell's truck. Campbell testified that Mercer thereafter stated: "I wouldn't be in the trouble I'm in today if I'd killed that other bitch on the rape." After introducing this statement, the State sought to corroborate Campbell's testimony by introducing evidence that Mercer was indeed being prosecuted for raping Debbie Middleton. Mercer had allegedly raped Middleton a month prior to raping and strangling Keeton. The State desired to introduce evidence of the prosecution for Middleton's rape because that prosecution would both corroborate Campbell's testimony and establish Mercer's motive for murdering Keeton, i.e., a desire to avoid being prosecuted for Keeton's murder. The State was prepared to have Middleton testify but Mercer's attorneys, wishing to avoid the prejudicial effect of having Middleton testify, agreed to a stipulation that Mercer was currently being prosecuted for raping Middleton. Mercer now claims that he was forced into making this stipulation, and that admitting proof of the prior prosecution violated his right to due process and was fundamentally unfair. We disagree.

Both the Federal Rules of Evidence and the Missouri Rules of Evidence allow evidence of prior convictions but generally do not allow into evidence prior arrests. *See, e.g., State v. Skinner,* 734 S.W.2d 877, 885

(Mo.Ct.App.1987); *State v. Hansel* 629 S.W.2d 509, 510 (Mo.Ct.App.1981); Fed.Rs. Evid. 404(b), 609. The trial court admitted the prior prosecution into evidence on the theory that it was relevant to Mercer's motive; Mercer had to kill Keeton in order to silence her so that she would not testify against him as Middleton had done. Furthermore, Campbell had testified that Mercer said he wished he had killed "that leaky cunt seventeen-year-old" as he had Keeton. Introducing this stipulation corroborated Campbell's testimony and explained the importance of Mercer's statement.

■ Whether a prior prosecution for rape should be admissible evidence is a question of state law. Our review, as the district court noted, *Mercer*, 643 F.Supp. at 1026–27, is limited to determining whether there has been a violation of Mercer's constitutional rights. *Manning–El v. Wyrick*, 738 F.2d 321, 323 (8th Cir.), *cert. denied*, 469 U.S. 919, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984). In order for the admission of evidence to warrant habeas relief, the trial court's error must have been so egregious that it denied the defendant his right to due process. To determine whether the defendant has been denied due process, the court must look at the totality of the circumstances, *Ellis v. Black*, 732 F.2d 650, 658 (8th Cir.1984) and decide whether the error was so " 'gross' * * * 'conspicuously prejudicial' * * * or otherwise of such magnitude that it fatally infected the trial and failed to afford petitioner the fundamental fairness which is the essence of due process." *Maggitt v. Wyrick*, 533 F.2d 383, 385 (8th Cir.) (citations omitted), *cert. denied*, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976).

■ Prior arrests are generally not allowed into evidence because of their extreme prejudicial value. *State v. Mallett*, 732 S.W.2d 527, 534–35 (Mo.), *cert. denied*, —— U.S. ——, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987); C. McCormick, *McCormick on Evidence* 557–58 (Lawyer's ed. 1984). Exceptions have been generally recognized, however, where the operative facts demonstrate a motive, plan, scheme, lack of mistake, or identity (as in the case of a signa-

ture crime). *Hardy v. United States*, 199 F.2d 704, 707 (8th Cir.1952); *State v. Mallett*, 732 S.W.2d at 534–35; *State v. Shaw*, 636 S.W.2d 667, 671–72 (Mo.), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982); *McCormick on Evidence* 558–64. In this case the trial court balanced the prejudicial effect of the prosecution against the relevance of the prosecution on Mercer's motive and Campbell's statement. The trial court found that the prejudicial effect of that evidence did not outweigh its probative value.

We find no error that could be said to have fatally infected the trial which resulted in the denial of a fair trial.

The district court's order denying habeas relief is hereby affirmed.