**Charles BANDY, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 33100.**

Missouri Court of Appeals,
Western District.

July 20, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied
Aug. 31, 1982.

John E. Turner, Popham, Conway, Sweeny, Fremont & Bundschu, P. C., Kansas City, for appellant.

John Ashcroft, Atty. Gen., Melinda Corbin, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, C. J., and WASSERSTROM and NUGENT, JJ.

WASSERSTROM, Judge.

Bandy moved under Rule 27.26 to set aside three convictions which had been entered pursuant to his pleas of guilty. The trial court denied the motion, and Bandy appeals. We affirm.

Bandy's sole point on appeal is that the trial court erred because his pleas of guilty were not knowingly and voluntarily made, he did not understand the nature of the charges against him, and there was no fac-tual basis for the pleas. Although this point in terms attacks the validity of the pleas to all of the charges then pending against Bandy, the argument portion of Bandy's brief deals only with the plea to the charge of second degree murder. This opinion will therefore be similarly confined.

Bandy argues that at the plea hearing, he "affirmatively denied an element of the crime of Murder in the Second Degree. This was done when he gave testimony that the struggle with Cunningham which led to Cunningham's death was suddenly provoked." His argument continues that this denial of an element of second degree murder demonstrated that he did not plead guilty to that charge with an intelligent understanding of the elements of the crime, that the plea was therefore equivocal, and that the plea therefore should not have been accepted. In this connection he further argues that the plea cannot be justified under *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) for the reason that no showing was made that Bandy understood the elements of the charge and nevertheless voluntarily chose to plead guilty rather than to take the risk of the jury disbelieving his innocence.

The facts underlying this matter are as follows. Bandy was incarcerated awaiting trial on forgery and other charges. He became involved in an altercation with another inmate Cunningham, as a result of which Cunningham died. Based upon that episode, Bandy was charged with capital murder. Bandy's attorney, Williams, entered into a plea bargain with the prosecuting attorney, under which the charge of capital murder would be reduced to murder in the second degree and the prosecutor would recommend a sentence of 20 years. Other elements of the plea bargain relating to the other pending charges need not be detailed.

A hearing was then held before Judge Moore of the Circuit Court for the presentation of Bandy's guilty pleas. The judge first made some preliminary statements and asked some preliminary questions of Bandy. Then Judge Moore made the following

statement: "Take the stand, please. If counsel can elicit from the Defendant in his sworn testimony that these pleas of guilty are entered knowingly, understandingly, and voluntarily, and that there is a factual basis for them, they will be accepted and the plea bargain will be honored. You may inquire to that end." Mr. Williams then undertook an interrogation of Bandy, in the course of which the following occurred:

"Q. (by Mr. Williams) Now to the facts of the crime, Mr. Bandy, let's first go to the —this Capital Murder charge which has been reduced to Second Degree Murder. Can you tell us, is this the offense that occurred on the 19th of May, 1978 up in the jail?

A. Yes.

Q. Could you tell us how that came about?

A. Only that I went down to see Cunningham about the silent treatment I was getting.

Q. The silent treatment you were getting?

A. Yes. From the rest of the inmates. When I asked him why, and approached him, and asked him why, he said, 'You know why', and held the letter up to me. And I reached for it, and he stabbed me in the chest with an ink pen he held.

Q. And then what happened?

A. Then we got in a scuffle and I panicked; and I don't remember the rest.

\*      \*      \*      \*      \*      \*

Q. What is the next thing you remember?

A. Waking up in Solitary Confinement Cell."

A colloquy between the court and counsel discloses that neither attorney Williams nor the court was satisfied with the foregoing testimony. However Judge Moore then made the following comment: "It is not as full and complete as it may be, but I think it might be that Mr. Schaffer [the prosecuting attorney] would be able to supply what the State's evidence would be, and the two together would spell it out sufficiently."

In response to that invitation by the court, the prosecuting attorney made the following statement of what the state's evidence would be: "I would state for the record that were we to proceed to trial, the State's evidence would be that Charles Bandy just a few minutes before David Cunningham was attacked and killed, had taken some shoes from Cell 2 and worn those. He had requested the assistance of other inmates in helping him attack Charles—attack David Cunningham; that during the course of the attack, he had knocked David Cunningham down to the floor, and David Cunningham was unconscious, at which time Mr. Bandy used the bunks on either side of the cell for support, and jumped up and down repeatedly on David Cunningham's head and in his face. \* \* \* The evidence will further be that David Cunningham died on the floor of his cell and died as a direct result of the attack on him by Charles Bandy. . . ."

At the 27.26 hearing, attorney Williams was called to testify by the state. Williams stated that he had examined the state's evidence, including video statements that had been given to the prosecutor under oath and that he had also examined the written reports of the disciplinary committee and the officers who had investigated the incident at the jail. He further stated that he had discussed all of that evidence with Bandy in connection with reaching a decision as to whether or not Bandy had a viable defense. Bandy himself had acknowledged at the plea hearing that Williams had discussed with him the video taped interviews.

■ Bandy's argument is correct to the extent that a guilty plea cannot be accepted without the furnishing of a factual basis, and if the facts stated to the court do not establish the commission of a crime, then the offered plea should be rejected. *Rice v. State,* 585 S.W.2d 488 (Mo. banc 1979); *Howard v. State,* 627 S.W.2d 643 (Mo.App. 1981); *Haynes v. State,* 565 S.W.2d 191 (Mo.App.1978). Bandy claims to come with-

in this rule because of his testimony at the plea hearing that the affray between him and Cunningham was suddenly provoked by the unexpected acts of the victim Cunningham. This, according to Bandy's argument, affirmatively denied one of the elements which the state must prove on murder second degree. Bandy cites in support of this contention the then applicable MAI–CR 6.06.[1]

One of the elements of second degree murder is premeditation. Provocation alone does not suffice to disprove the element of premeditation. The provocation must be "lawful or adequate" to reduce the offense from second degree murder to manslaughter, and the defendant will be deemed guilty of the lesser offense of manslaughter only if he killed in the heat of passion. *State v. Robinson,* 185 S.W.2d 636 (Mo.1945). Moreover, in considering the length of time available for premeditation, the premeditation need only exist for a moment before the killing. *State v. Little,* 601 S.W.2d 642 (Mo.App.1980).

In the present case, regardless of whether Cunningham provoked the quarrel as testified by Bandy, the only evidence available showed that any such provocation had come to an end before Bandy performed his fatal acts. Cunningham had been rendered unconscious. After that, Bandy deliberately positioned himself so as to trample on Cunningham's face and head to the point of killing him.

Even though these latter facts were not elicited from defendant's lips, he heard the prosecutor's recital of them and made no protest. *Bounds v. State,* 556 S.W.2d 497 (Mo.App.1977); *Matthews v. State,* 501 S.W.2d 44 (Mo.1973). In fact, the prosecutor's recital came as no surprise to Bandy, for his attorney had listened to the state's video statements, and Bandy had discussed those statements with his attorney as a preliminary to the decision as to whether a plea bargain should be accepted. The inability of Bandy to remember the facts, even if true, does not invalidate his guilty plea. *Howard v. State, supra; Haynes v. State, supra; Hayes v. State,* 501 S.W.2d 508 (Mo. App.1973).

After considering all of the evidence, Judge Hanna in this 27.26 proceeding found as follows: "The Court finds that the movant was fully aware of the factual basis for the plea to the charge of murder second degree as well as the charge of capital murder and to the charge of assault. The Court finds that those facts had been discussed repeatedly with his attorney before the plea, the movant understood that those were the facts and that they constituted the crimes charged." Judge Hanna then concluded: "The Court can only conclude and does, that at the time the pleas were given the defendant understood the nature of the charges against him; the range of punishment for each of the offenses; that the pleas were made understandingly and knowingly; * * * The Court further concludes that the defendant entered his pleas of guilty of his own free-will and volition, understood all of his constitutional rights and freely and voluntarily waived those rights." The findings of the trial court are not clearly erroneous. Rule 27.26(j).

Affirmed.

All concur.

---

1. Former MAI–CR 6.06 read in pertinent part: "If you find and believe from the evidence beyond a reasonable doubt: * * * Third, that the defendant did not do so in (anger) (fear) (agitation) suddenly provoked by the unexpected acts or conduct of [name of victim], (and) * * * then you will find the defendant guilty (under Count ____) of murder in the second degree. * * *"