**STATE of Missouri, Plaintiff-Respondent,**

v.

**Ronald SKINNER, Defendant-Appellant.**

No. 51978.

Missouri Court of Appeals, Eastern District, Division Three.

June 23, 1987.

Motion for Rehearing and/or Transfer Denied July 30, 1987.

Application to Transfer Denied Sept. 15, 1987.

Charles Shaw, Shaw, Howlett & Schwartz, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Defendant, Ronald W. Skinner, appeals from a conviction of first degree murder in violation of Section 565.020 RSMo 1986. The conviction arose from the death of Diane Green on September 3, 1985, which resulted from a gunshot wound to the head. The judgment is affirmed.

Edward Little, also known as James Little had called defendant and informed him that he had hash[1] to trade for marijuana. Defendant then made arrangements with a friend to sell Little a pound of marijuana for three hundred dollars and nine ounces of hash. The defendant, Little and defend-

---

1. Hash is a slang expression for hashish, a narcotic drug.

ant's friend were to meet in O'Fallon Park in St. Louis at 8:00 p.m. to make the exchange, but defendant, defendant's friend who was bringing the marijuana, and a second friend of defendant's arrived late. Their car parked behind Little's automobile and defendant exited the car and approached Little's vehicle.

Little testified that defendant immediately opened the door of the vehicle and climbed into the backseat. Diane Green, Little's girlfriend, and Diane's sister Janine were seated with Little in the front seat. However, both defendant and Janine Green testified that Little and defendant talked for a few minutes while defendant was standing outside the car. Defendant also testified that he got into Little's car only after he told Little that his friends had the marijuana elsewhere and would have to lead Little to it. At that point, according to defendant, Little told him that he would not go ahead with the deal, unless defendant rode with him.

The cars eventually pulled up next to the side of a factory on Hall Street. Then shooting broke out in the Little car. Little was shot in the arm. Diane Green was shot twice; the fatal wound entering through her head. Diane's sister Janine was shot in the ear. Only the defendant left the vehicle unscathed. However, there was differing testimony as to how the shooting began.

Little asked "Ron is this it?" Defendant responded "This is it" and then, according to Little, defendant pulled a gun and began shooting. Janine Green's testimony was in accord with Little's. Little and Janine Green both indicated that all the shots came from the backseat. Little and Green's testimony also indicated that, after defendant exited the vehicle, he set it afire. Little testified that he heard someone say "clean it up Ron" and then heard a rubbing noise, as though fingerprints were being wiped off, before the car caught fire.

Defendant testified that Diane Green and Little had been fighting over whether Diane was going to give Little money to make the deal, and that after the car was parked, Little pulled a gun. Defendant stated that Little, Janine and Diane had been smoking PCP laced cigarettes on the way to the factory and that when he saw the gun, he did not know who Little planned to shoot. He testified that he reached for the gun to take it away from Little, but that Little struggled with him and that in the struggle, the gun began to fire. When the shooting stopped, according to defendant, he exited the car and found his friends' car gone and walked or ran home. He stated that he did not know how the fire, which burned Little's car, started.

The medical evidence came from the St. Louis City Medical Examiner's Office. The medical examiner, Dr. Mary Case, indicated that the angle of Diane's wounds was consistent with the shots having been fired from the rear and that the volley was from close range.

After defendant had left the scene Janine Green climbed out the window of the car and ran for help. Little testified that he carried Diane from the burning car. Further factual details will be added under the points to which they pertain.

Defendant's brief contains thirteen separate points on appeal. We first address the issues presented by defendant related to alleged instructional error; points eight, nine and ten in defendant's brief; and defendant's seventh point which relates to the death qualification of the jury.

■ Point eight alleges error in the failure of the trial court to instruct the jury on self-defense. In determining whether a self-defense instruction is required, the evidence must be viewed in the light most favorable to the theory of self-defense put forth by defendant. *State v. Ehlers*, 685 S.W.2d 942, 946–948 (Mo.App.1985). If there is substantial evidence putting self-defense in issue, the trial court must instruct on self-defense, whether or not a self defense instruction is offered, and here defendant offered instructions on the issue, *See, State v. Pride*, 567 S.W.2d 426, 430–431 (Mo.App.1978). Defendant's proffered self-defense instruction, however, was not supported by substantial evidence. Defendant never asserted that the gun held

by Little was pulled on him, or that Diane Green ever had a gun. Paragraph two of the proffered instruction states that in order to find defendant not guilty because he acted in lawful self-defense, the jury must conclude that the defendant "reasonably believed it was necessary to use deadly force to protect himself against what he reasonably believed to be the imminent use of unlawful force putting himself in an imminent danger of death or serious physical injury *at the hands of Diane Green.*" Emphasis added. There was no evidence to support such a finding. In fact, if defendant's evidence is to be believed, he never voluntarily used deadly force against anyone. Therefore self-defense was not a defense supported by the evidence.

We next address the issue of whether the court erred in failing to give MAI–CR2d 2.28, an instruction on excusable homicide. What defendant ignores is that this instruction was withdrawn by our Supreme Court effective October 1, 1984, prior to any of the events relevant to this cause. The trial court did not err in refusing to give an instruction based on a withdrawn MAI Criminal Instruction.[2]

■ Defendant also predicates error on the trial court's failure to instruct the jury as to voluntary and involuntary manslaughter. A trial court must instruct on all lesser included offenses supported by the evidence. *State v. Story,* 646 S.W.2d 68, 73 (Mo. banc 1983); *State v. Smith,* 592 S.W.2d 165, 165 (Mo. banc 1979). An instruction on a lesser included offense is required whenever an evidentiary basis exist for a verdict acquitting the defendant of the charged offense and convicting him of the lesser included offense. Section 556.046.2 RSMo 1986; *State v. Olson,* 636 S.W.2d 318, 321 (Mo. banc 1982).

■ Voluntary manslaughter is the intentional killing of a human being in the heat of passion, on reasonable provocation. MAI–CR2d 13.08; *State v. Sturdivan,* 497 S.W.2d 139, 142 (Mo.1973); *Bandy v. State,* 639 S.W.2d 136, 139 (Mo.App.1982). Defendant did not testify, nor was there any

evidence, that defendant shot Diane Green in the heat of passion or that there existed reasonable provocation. Defendant's testimony indicated that he had not intentionally shot anyone. Therefore, there was no error in the trial court's failure to instruct the jury as to voluntary manslaughter.

Defendant's involuntary manslaughter instruction under MAI–CR2d 13.10 read as follows:

## INSTRUCTION NO. I

If you do not find the defendant guilty of voluntary manslaughter, you must consider whether he is guilty of involuntary manslaughter.

If you find and believe from the evidence beyond a reasonable doubt:

First, that on September 3, 1985 in the City of St. Louis, State of Missouri, the defendant caused the death of Diane Green by shooting her, and

Second, that the defendant recklessly caused the death of Diane Green, then you will find the defendant guilty of involuntary manslaughter.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty [of involuntary manslaughter].

In determining whether the defendant recklessly caused the death of Diane Green, you are instructed that a person acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances.

Defendant's testimony, which allegedly formed the evidentiary basis for the instruction, was:

He [Little] told her [Diane], 'Give me the money,' and she said that she wasn't going to give him no money.

2. MAI–CR2d 2.28 Excusable Homicide was ordered withdrawn August 15, 1984 effective October 1, 1984. *See* volume 673–674 S.W.2d Missouri Cases, page XXXVII.

And they started getting into a loud argument and she started moving her hands all around, he started moving his hands all around, they were getting into a little push and shove in the front seat.

All of a sudden, I don't know where it came from or nothing, but he had a gun in his hand.

And at that time he had the gun in his hand, and he turned around and made a quick look at me and I grabbed the gun, and when I grabbed the gun I tried to get it away from him because I didn't know who he was going to shoot.

I grabbed the gun. I tried to pull it away from them [sic], the gun just started going off repeatedly.

Later on cross-examination, defendant added: "It happened too quick ... I was trying to save my life."

■ A key element of the offense of involuntary manslaughter, as set out in MAI–CR2d 13.10, is recklessness. Recklessness is defined as acting in such a manner that there is a substantial and unjustifiable risk that the actor will cause death and consciously disregarding the risk where such disregard is a gross deviation from what a reasonable person would do under the circumstances.

■ The trial judge found, and we agree, that defendant's evidence does not form an evidentiary basis for a finding of recklessness. If defendant's testimony is believed, he was confronted by an armed man who he attempted to disarm. This alone does not and cannot form an evidentiary basis for a finding that defendant acted with a conscious disregard for human life or for a finding that his actions grossly deviated from what a reasonable person would have done under the circumstances. The trial court thus correctly determined that there was no evidentiary basis for the requested instruction.

Defendant alleges error in point seven of his points on appeal on the basis of the death qualification of the venire panel. Defendant contends that death qualification of venire persons was improper because death qualification results in a guilt prone jury. This theory has been rejected by the United States Supreme Court and by the Missouri courts which have addressed the issue. *See, Lockhard v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *State v. Mathenia*, 702 S.W.2d 840, 845 (Mo. banc 1986); *State v. Nave*, 694 S.W.2d 729, 735–736 (Mo. banc 1985); *State v. Harper*, 713 S.W.2d 7, 9 (Mo.App.1986). The contention is meritless and there was no error.

We now address each of defendant's remaining allegations of error in the order in which he set them out in his brief.

In his first point on appeal, defendant asserts that the trial court erred in allowing the state to introduce evidence relating to defendant's character before he had placed his character in issue. He points to three events during the state's case in chief which he claims were prejudicial.

■ The first event involved the introduction of state's exhibits 33, 34, 37 and 38; four letters allegedly written by defendant which were confiscated by Rita Robin, the mother of state's witness Eric Robin, before they reached her son. Eric Robin was living with his mother at the time. The letters instructed Eric to remain quiet and threatened repercussions in the event that anything he said was damaging to defendant. Evidence of threats by a defendant against witnesses against him and declarations of a defendant relevant on the issue of consciousness of guilt or desire to conceal facts concerning the offense are relevant and admissible in a criminal trial. *State v. Mason*, 394 S.W.2d 343, 344 (Mo. 1965); *State v. Brooks*, 551 S.W.2d 634, 647 (Mo.App.1977), *cert.* denied, 434 U.S. 1017, 98 S.Ct. 736, 54 L.Ed.2d 763 (1978). The letters were therefore admissible.

■ The second event related to a symbol, similar to a star, which was on the letters. The prosecutor questioned three of defendant's friends, Eric Robin, Kevin Ford and Douglas McGhee, as to whether they had tattoos similar to that "star." They were also asked whether defendant had such a tattoo. As noted earlier, the letters were relevant and admissible if they were written by defendant. However, de-

fendant did not admit to being the writer and therefore authorship was in dispute. The state had no direct evidence on that issue. It therefore sought to prove authorship by circumstantial evidence, which included an attempt to link the star as a symbol used by defendant and his associates. The questions were answered by all witnesses in the negative. We find no prejudice.

Finally, defendant points to the following exchange as evidence of the state's "improper and prejudicial" attempt to get evidence of defendant's character before the jury.

> Prosecutor: Was one of the rumors that was travelling real quick that Ron told you if anybody ever shorted him [on a drug deal] he'd "cap them."
>
> Douglas McGhee: No sir. I've never even seen Ron [the defendant] hit nobody [sic].
>
> Prosecutor: You haven't.
>
> McGhee: I have never seen Ron hit a person in my life as long as I've known him.
>
> Prosecutor: How about Jamie Northington?
>
> McGhee: As far as I knew, he was good friends with Ron.

We note first that McGhee was a friend of defendant's and was being examined by the state after being declared a hostile witness, a declaration the defense is not disputing.

The state's evidence indicated that Little had in fact shorted defendant in an earlier drug transaction and McGhee's original statement to police was that defendant had threatened to "cap" anyone who shorted him. McGhee then retracted the statement. The first question was thus related directly to the issues of motive and intent. McGhee volunteered the information that he had never seen defendant kill anyone. No objection was made to the state's follow-up question, and no prejudice appears from the record.

■ Defendant also contends the court erred in failing to exclude the testimony of a police officer. The officer testified that defendant had a reputation for violence in the community. The officer's testimony was introduced in rebuttal after defendant had testified on direct examination that he was not a violent person. The evidence was thus impeachment of defendant's testimony.

■ Where evidence is relevant on another issue, it should not be excluded because it may discredit defendant's character. *See, State v. Williams, supra,* 672 S.W.2d 80, 83 (Mo.App.1983).

Defendant further argues that the state can only introduce evidence relating to defendant's character, however, after defendant has introduced substantial evidence indicating that he is not the type of person who would have committed the offense.

■ We note first that defendant's assertion that substantial evidence is necessary before the door is open for character evidence from the state is an incorrect one. The law is clear, there must be some evidence of character from the defendant's side before reputation or character evidence can be introduced by the state. The "substantial evidence of good character" test comes into play only with regard to the issue of whether MAI–CR2d 2.50 must be given. *See, State v. Manning,* 682 S.W.2d 127, 131 (Mo.App.1984).

Defendant was the only defense witness as to the events of September 3, 1985 which led to the shootings in Little's car. His credibility was therefore a crucial issue in the case with regard to the determination of whether he was guilty. On direct, as mentioned above, he had stated that he was "not a violent person." Defendant's testimony on cross-examination included the following assertion "I'm very passive. I don't mess with nobody." The trial court did not abuse its discretion by allowing the state on rebuttal to attempt impugning defendant's credibility by showing that his statements regarding his own character were not credible. We find no error.

The defendant now alleges error in the trial court's giving of MAI–CR2d 2.50. The defendant failed to specifically object to the giving of this instruction at trial and in his motion for a new trial. Thus, we

must review defendant's point under the "plain error" rule and we find that the trial court did not so misdirect the jury to produce or cause manifest injustice. *State v. Ealey*, 624 S.W.2d 465, 467 (Mo.App.1981). Defendant's point is denied.

Defendant next claims the trial court erred by permitting Police Officer McGraw to testify concerning statements made by Douglas McGhee, a friend of defendant's, when he was initially questioned by police officers investigating the shootings. McGhee at that time had stated that defendant owned a sawed off shotgun and, as stated above, had threatened to "cap" anyone who shorted him. McGhee had added that on September 3, 1985, the day of the shootings, defendant had asked for a ride into the city for the purpose of making a drug transaction. McGhee had also told police that defendant had previously bought drugs from Little. When McGhee testified for the defense, he unequivocally acknowledged that he had made these statements except for the one concerning previous drug transactions between Little and defendant. He was not asked whether he had made that statement. He also explained that he had misspoken. Police Officer McGraw was then called by the state in rebuttal to testify that those statements were made to him.

■ "An unequivocal denial of a prior inconsistent statement is not a prerequisite to the introduction of that statement for impeachment; rather, an unequivocal admission of the prior statement obviates the need to introduce the statement and thus, bars its introduction." *State v. Mitchell*, 693 S.W.2d 155, 159 (Mo.App.1985). Also, a witness cannot be impeached with a prior inconsistent statement unless he was questioned on cross-examination about the statement. *See, Mitchell, supra.* Therefore, much of McGraw's testimony was improperly permitted. However, we find no prejudice.

■ With one exception, McGhee had already admitted making the statements and McGraw's testimony that McGhee had mentioned a previous drug transaction between defendant and Little is hardly critical where defendant himself admitted at least to being involved, if not to being the principal, in a previous drug deal with Little. McGhee had already explained that he had "misspoken" when talking to the officer.

■ Defendant's third contention is that defense counsel was improperly prevented from introducing evidence of Little's reputation as a violent person and of previous violence by Little directed at the victim, Diane Green. There was no evidence that defendant knew of Little's reputation or of any violent acts by Little toward Diane. Therefore unlike in *State v. Goforth*, 721 S.W.2d 756 (Mo.App.1986), cited by defendant, the evidence defendant sought to introduce was irrelevant to the issue of what defendant reasonably believed. Missouri courts have long held that the reputation of the victim for turbulence and violence cannot be established by proof of specific acts of violence on his part against persons other than the defendant. *State v. Nelson*, 484 S.W.2d 306, 308 (Mo. 1972); *State v. Ball*, 529 S.W.2d 901, 908 (Mo.App.1975). While Little was a victim but not the victim of the charge in the case *sub judice*, we hold that the trial court was correct in finding that the principle of the above cited rule applies also to the case at bar. Evidence that Little was a violent person or that he had on occasion been violent toward the victim was not admissible and no error occurred.

In his fourth point on appeal, defendant asserts that the trial court erred in sustaining in state's motion in limine as to any inquiry concerning "whether or not Little ever possessed a weapon on prior occasions or a [sic] had ever been arrested for any weapons related offenses." Defendant contends that he was also prevented from inquiring into whether Little had, in fact, committed a weapons related crime and into whether he had ever admitted committing such an offense. However, the latter inquiry was not prevented by the above cited wording in the motion in limine and defendant never attempted the inquiry at trial. He therefore cannot assert error on this basis. The ruling on the motion also

did not prevent any inquiry regarding convictions for weapons offenses.

The ruling only prevented defense counsel from cross-examining Little as to whether he had ever possessed a gun, an act which does not necessarily constitute a crime, and as to whether Little had ever been arrested on a weapons charge. The extent and scope of cross-examination to be allowed is discretionary with the trial court, and this court will not interfere unless there is a clear abuse of this discretion. *See, State v. Dunn,* 577 S.W.2d 649, 653 (Mo. banc 1979); *State v. Cook,* 673 S.W.2d 469, 473 (Mo.App.1984); and *State v. Butler,* 601 S.W.2d 659, 660 (Mo.App.1980).

■ Evidence of prior arrests is not admissible for purposes of impeaching the credibility of a witness. Evidence of prior arrests is admissible only where it goes to some issue other than the arrestee's credibility. *State v. Mitchell,* 491 S.W.2d 292, 295 (Mo. banc 1973). A defendant may be asked whether or not he has ever committed a crime, a question that he may refuse to answer on the basis of self-incrimination, or whether he has ever admitted an offense or been convicted of one. *Neal v. State,* 669 S.W.2d 254, 262 (Mo.App.1984). These inquiries were not prevented by the motion in limine and, since the inquiries were not asked during the trial, we find the court did not err.

■ Defendant further asserts that apart from credibility, Little's arrest record and his past history of carrying a gun were relevant on the issue of whether Little had a gun on September 3, 1985. We fail to see the relevance of either fact to this issue and we also note the presumption of innocence and the fact that an arrest itself is not evidence of a crime. We find no error in the trial court's sustaining of the motion in limine with regard to evidence of whether Little had "ever possessed a weapon ... or ... been arrested for any weapons related offenses."

■ Defendant next predicates error on the trial court's refusal to declare a mistrial after Sereno Thompson, a state's witness testified that he and defendant had "discussed getting a way to get in hacksaw blades;" meaning to get them into the St. Louis City Jail, where the two were awaiting trial. Following a defense objection and a request for a mistrial, the trial court did sustain the objection and instruct the jury to disregard the statement. "The declaration of a mistrial is a drastic remedy and should not be resorted to except in those extraordinary situations where prejudice cannot be removed by other means." *State v. Charles,* 542 S.W.2d 606, 611 (Mo. App.1976). "Trial courts have discretion in dealing with trial error.... They have a 'superior vantage point from which to assess the pervasive effect of a prejudicial statement and whether it can be dissipated by a timely and appropriate action short of declaring a mistrial.'" *State v. Chaney,* 663 S.W.2d 279, 287 (Mo.App.1983), quoting *State v. Charles, supra,* 542 S.W.2d at 611. We find no abuse of the trial court's discretion.

■ We next address defendant's assertion that the court improperly permitted the late endorsements of Sereno Thompson and Rita Robin. Defendant contends that the endorsement of Sereno Thompson was in direct violation of a discovery order issued on April 16, 1986 which required the state to turn over to defense counsel, no later than April 22, 1986, any oral or written statements by defendant possessed or known of by the state as of that date. Sereno Thompson was not endorsed until four days before the trial. Robin was endorsed after the trial began. However, defendant does not allege that the state knew of statements allegedly made by defendant which were in the hands of Robin, prior to April 22, 1986. He does, however, allege that the state knew of the statements that Sereno Thompson would testify the defendant made. However, further on in defendant's brief, he concedes that the state did not know about the statements testified to by Thompson until April 24, 1986. Thus the court order was not violated. However, discovery was, in fact, late.

This alone, however, placed no compulsion on the trial court to exclude the testimony of either Thompson or Robin. The

questions of whether or not to apply sanctions and what sanctions to apply when discovery is not timely given, are questions left to the sound discretion of the trial court. This court will intervene only where a defendant demonstrates that the state's failure to make timely disclosure resulted in fundamental unfairness. *State v. Bizzle*, 608 S.W.2d 111, 113 (Mo.App.1980).

■ Defense counsel did not request an opportunity to interview Thompson, nor did he ask for a continuance when the court allowed the late endorsement. He did ask for and receive an opportunity to interview Rita Robin, and again he failed to request a continuance. We therefore find no fundamental unfairness resulting from the trial court's allowance of late endorsements.

Defendant, however, asserts a second reason that Rita Robin's testimony regarding the earlier described letters to her son was improper in a later point. Defendant's allegation is that those letters were inadmissible, because they were intercepted by Rita Robin in violation of 18 U.S.C. Sections 1701 and 1702 which prohibit interference with the mails. He correctly notes that those letters were addressed to Rita's son Eric Robin. Defendant contends that by admitting those letters, the court condones the violation, even though the content of the letters, as mentioned above, would otherwise be admissible. We disagree.

■ The exclusionary rule applies for the purpose of discouraging *law enforcement officials* from resorting to violations of the laws. Here there was no violation by law enforcement authorities. They were given the letters by Rita Robin, acting as a concerned mother. As the state suggests, defendant may have a civil cause of action against Robin. We do not rule that issue, since it is a matter of federal law and is irrelevant to the case *sub judice*. The letters had, however, already been intercepted prior to any state contact with them and we find no public policy necessitating their exclusion.

Defendant also asserts that the state failed to make a submissible case on the issue of deliberation. Again, we disagree.

It is well established that when examining the submissibility of the state's case, we view the evidence in the light most favorable to the state. *State v. Craig*, 642 S.W.2d 98, 101 (Mo. banc 1982); *State v. Kincade*, 677 S.W.2d 361, 364 (Mo.App. 1984).

■ Viewing the evidence in that light, the state's evidence was more than sufficient to make the issue of the existence of deliberation a jury question. The jury could find from the evidence that defendant had forced his way into Little's car at O'Fallon Park in St. Louis and guided Little to a warehouse where without provocation, he began shooting. This evidence was sufficient to demonstrate that the defendant's actions were deliberately planned. The term "deliberate" connotes that defendant considered the taking of a life with a "cool and deliberate state of mind." *State v. Marston*, 479 S.W.2d 481, 484 (Mo. 1972). There was ample evidence that the defendant's decision to draw a gun and begin shooting was made in a cool and deliberate state of mind.

Finally, defendant argues that statements made by Little and Janine Green to a police officer who responded to Janine Green's emergency call after the occurrence were inadmissible hearsay because they were not instantaneous. The court below found them to be admissible under the doctrine of res gestae and we agree. Both Janine Green and Little were wounded. Janine's sister, Little's girlfriend, was dead. Certainly some time passed. As defendant points out, the record does not reflect how much time. Res gestae refers to those exclamations or statements inspired by the excitement of the occasion where there was little or no opportunity for the declarant or declarants to fabricate a false statement. *State v. Hook*, 432 S.W.2d 349, 353 (Mo.1968); *State v. Boyd*, 669 S.W.2d 232, 234 (Mo.App.1984).

■ Defendant asserts that the time lapse between the shootings and the arrival of the officer was sufficient to allow for fabrication and therefore res gestae is inapplicable. That bold assertion is without

any foundation. Defendant ignores the stress of the events and the fact that Janine Green went for help immediately after exiting the burning car while Little was extricating the victim, Diane Green from the car. Both parties experienced excruciating pain and were likely concerned about the extent of the injuries. There is no evidence of collusion. The witnesses went their separate ways, yet independently, gave very similar accounts to the police officers. Further, as previously mentioned, there is no evidence as to the amount of time that elapsed from the events in evidence and the time the police officers arrived and obtained the statements of the witnesses. The trial court properly found, under the totality of the evidence, the declarations made to the officer to be admissible under the res gestae doctrine.

Judgment affirmed.

CRANDALL and KAROHL, JJ., concur.