**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Johnny REYNOLDS,
Defendant–Appellant.**

No. 15958.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 21, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Jan. 9, 1990.

Application to Transfer Denied
Feb. 13, 1990.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Charles M. Shaw, James J. Knappenberger, Shaw, Howlett & Schwartz, Clayton, for defendant-appellant.

PREWITT, Judge.

Following jury trial defendant was convicted of the second-degree murder of his wife Carla, § 565.021, RSMo 1986, and armed criminal action, § 571.015, RSMo 1986. He was sentenced to twenty years' imprisonment for murder in the second degree and three years for armed criminal action, the sentences to run concurrently. Defendant appeals.

The charges arose from a shooting that occurred in the early morning of August 4, 1987, in Winona. Defendant and Carla, his wife of seventeen days, lived there. Robert Hart, who lived across the street from them, was awakened by a knock on the door and a woman's voice asking for help. When he opened the door, Carla fell halfway into the house. She was bleeding profusely. Hart saw defendant kneeling partially on the ground and on his porch. There was a rifle laying on the porch and defendant was mumbling, "gruntin' and spittin'".

Defendant moved toward his wife who was lying in the doorway and lay "kinda anglin' across her chest". Defendant then got up and walked back across the street to his home. A few minutes later City Marshal McClurg and Highway Patrolman Kevin Floyd arrived. Appellant was then crouched in front of his pickup truck and Floyd ordered him to come out into the street. Defendant did so, but yelled, "Shoot me, shoot me". He also yelled at Junior Wallace, a member of the Winona Police Department who was present, "shoot me, you son-of-a-bitch ... you're gonna fry me anyway." Floyd restrained defendant and read him his "Miranda" rights. Defendant had been shot and was taken to a hospital.

Carla was killed by a .22 rifle. She died from a wound to her upper chest. She had been shot there at close range in the bedroom of their house. She also had been shot through the "web" of flesh between the right thumb and forefinger. The bathroom door was "tore loose" from its upper hinge and had not been in that condition two days previously. Several spent casings were recovered, one from between Carla's feet on Hart's porch, one from the bedroom of the Reynolds' house, and one from behind defendant's pickup parked at their house.

Defendant testified that when he arrived home between 1:00 and 2:00 a.m. Carla was mad at him. He said she thought he had been with his ex-wife. He said that Carla pulled the rifle from a corner, they "wrestled over it", and sometime during the tussle, it went off. He claimed he did not know she was shot until she got across the street to the Hart's porch and fell. Defendant said he saw she "was lifeless and I got the gun and I put it under my chin and I pulled the trigger." Other evidence, primarily statements allegedly made by defendant, will be discussed in considering defendant's points.

■ For his first point defendant contends that the trial court erred in failing to strike venireman Thomas Lance "for cause when said juror gave equivocal answers" which "forced defendant to utilize a preemptive [sic] strike". According to the legal file, furnished by defendant as appellant, plaintiff struck Lance, defendant took his six peremptory challenges, see § 546.180.1(2), RSMo 1986, to strike other venirepersons. Even if Lance should have been stricken by the court, that failure could not have been prejudicial. This point is denied.

For his second point defendant asserts that the trial court erred in allowing his deceased wife's sister, Pat Nitsch, to testify that on the day defendant and Carla married, "I looked at John, and I said, 'How long do you think this marriage will last?' And he said, 'It'll take three bullets to end it.' And I turned and I said, 'What

do you mean?' And he said, 'I'll kill Carla, I'll kill Cherish [her daughter], and then I'll turn the gun on myself.' " [1]

Defendant asserts that this testimony was not within any exception to the hearsay rule and that the state "failed to make disclosure of the witness." Contrary to defendant's point, the record shows both in a response to discovery, and as an attachment to the information, that the name and address of the witness was furnished to defendant.

At trial defendant's counsel objected to this testimony because "we have never been apprised with any statements made by John to this woman. And the Rules of Criminal Procedure require that any statements made by the defendant against interest or confession to facts, be supplied to the defense."

■ A party on appeal cannot raise a different reason as to why evidence should be rejected than was presented at trial. When this occurs, nothing is preserved for appellate review. *State v. Shepard*, 681 S.W.2d 473, 475 (Mo.App.1984). This point is not preserved for review. We also note that the record does not establish that the prosecutor violated any of the rules of discovery. See *State v. Klaus*, 730 S.W.2d 571, 578 (Mo.App.1987).

For his third point defendant contends that the trial court erred "in allowing the sheriff to testify as to defendant's silence." Defendant states that this was an adverse comment on defendant's right to remain silent under the fifth amendment to the United States Constitution. In his brief defendant asserts that he objected to this testimony and his "objection was overruled". Again, defendant misstates the record. The record reflects that the following occurred:

Q. You never did talk to Mr. Reynolds yourself?

A. No sir.

Q. He was gone?

A. Yes.

---

1. As earlier mentioned the wedding was seven-    teen days prior to Carla Reynolds' death.

Q. You've seen him several times since then?

A. Yes.

Q. You've transported him from place to place during these proceedings?

A. Before he made bond, yes.

Q. And did he ever tell you what happened out there?

A. No sir.

Q. He had every opportunity?

MR. SHAW [defendant's attorney]: May we approach the bench, Your Honor?

Defendant's counsel then stated that "defendant is going to ask the question and the answer previously asked and given be stricken and the jury be discharged and a mistrial declared". The trial judge then stated that he would "sustain your objection in the sense that the jury will be instructed to disregard it, but not as to a mistrial." The trial court then informed the jury to disregard the last two questions propounded to the sheriff and the answers given.

■ The parties agree that generally the silence of an accused under arrest is inadmissible. See *State v. Mathenia*, 702 S.W.2d 840, 842 (Mo. banc 1986), cert. denied 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986). The question here is whether or not a mistrial should have been granted.

■ Granting a mistrial is a drastic remedy to be employed only in extraordinary circumstances in which prejudice to the defendant can be removed in no other way. *State v. Clark*, 756 S.W.2d 565, 570–571 (Mo.App.1988). Whether to grant a mistrial rests in the trial court's discretion. Id.

■ Defendant did not object when the first question was asked regarding whether defendant told the sheriff what happened. Defendant made various statements to several people and the fact that he did not say anything to the sheriff would not appear to be so prejudicial that

the trial court had to grant a mistrial. Not granting it was not an abuse of the trial court's discretion. This point is denied.

■ The initial sentence of defendant's fourth point fails to set forth what ruling of the trial court is questioned. A point relied on "shall state briefly and concisely what actions or rulings of the court are sought to be reviewed". Rule 30.06(d). By failing to do so, defendant has not preserved this part of his point for appellate review. *State v. Maxson*, 755 S.W.2d 277, 281 (Mo.App.1988); *Adail v. State*, 612 S.W.2d 6, 7 (Mo.App.1980).

■ The second sentence of defendant's fourth point states that the trial court erred in allowing the testimony of an ambulance driver and the city marshal of Birch Tree to testify as to certain things defendant told them.[2] During the direct testimony of the ambulance driver, the record shows the following occurred:

"Q. Well did you tell him [defendant] that Carla was dead?

A. On the way to Springfield, he asked me if Carla was dead. He stated, 'Is Carla dead?' And I said, 'Yes, she is.'

Q. What response did he make?

A. He said, 'Well good, that'll save a divorce.'"

During the direct examination of City Marshal McGary, defendant contends that the trial court should not have allowed the following:

"Q. [Prosecuting Attorney] Did he continue to make statements?

A. Yes, he did.

Q. About what?

A. 'I killed a person,' and 'Tuffy, give me your gun and I'll show you how tough people are.' You know, just statements like that."

■ No objection to the ambulance driver's testimony was made until at the close of the cross-examination when the court was asked to instruct the jury to disregard

---

**2.** This may be the ruling the first sentence of defendant's fourth point was referring to when it said, "The prosecutor consistently ignored Rule 25.03 making no disclosure as to alleged statements of defendant." If so, it is covered in deciding the question raised by the second sentence.

this testimony because defendant did not receive a statement of the witness pursuant to his discovery motion. The objection to this testimony came too late. To preserve an objection on the grounds of the inadmissibility of evidence, the objection must be made at the time the evidence is sought to be introduced. *State v. Brown,* 752 S.W.2d 382, 384 (Mo.App.1988).

Before City Marshal McGary testified, defendant objected by his counsel stating that he wished "to renew the original Motion to Suppress such a statement". On appeal appellant contends that McGary's testimony should have been excluded because of nondisclosure under Rule 25.03. The motion to suppress, assuming the reference to it was sufficient to be a valid objection, was based on no probable cause for arrest, violation of defendant's "Miranda" rights, and coercion. As earlier noted, a point on appeal must be based upon the theory of rejection at trial. See *Shepard,* 681 S.W.2d at 475. As a new contention is now being made, this contention is not preserved for our review. This point is denied.

■ For his fifth point defendant contends that the trial court erred in admitting into evidence "a gruesome and bloody photograph of the deceased." That exhibit has not been filed here. It was defendant's burden as an appellant to supply this court with a sufficient record to review this point, and failing to do so requires that it be denied. See Rule 30.04(a); *State v. Scott,* 769 S.W.2d 192, 194 (Mo.App.1989). In addition, Rule 30.05 provides that an exhibit not properly filed "may be considered by the court as immaterial to the issues on appeal." This point is denied.

For his sixth point defendant states that there was insufficient evidence to support submitting instructions on the offenses for which defendant was convicted, second-degree murder and armed criminal action. In reviewing whether the evidence was sufficient, this court reviews the evidence in the light most favorable to the verdict, affording the state all reasonable inferences from the evidence. *State v. Rodden,* 728 S.W.2d 212, 213 (Mo. banc 1987).

■ Defendant states in his brief that there was not sufficient "evidence, direct or circumstantial, of deliberation, cool reflection, intent or intentionally engaging in conduct practically certain to cause death." Direct proof of a required mental state is seldom available and circumstantial evidence and the inferences from it is acceptable to make such proof. *State v. Abercrombie,* 694 S.W.2d 268, 271 (Mo.App. 1985).

■ The jury, of course, did not have to believe defendant's testimony. Carla's wound to her hand would indicate she might have been seeking to ward off the use of the weapon or the shot. Defendant and Carla were the only adults present when she was shot. The evidence, including the various statements that defendant made indicating guilt, was sufficient to support the instructions and the verdict. The jury could have found that defendant intentionally shot Carla. This point is denied.

For his seventh point defendant states that the trial court erred in refusing to submit an instruction he offered that the death was "excusable homicide" as a result of accident. It is not error to refuse such an instruction. Although previously allowed, see MAI–CR 2d 2.28, it was withdrawn in MAI–CR 3d. See *State v. Miller,* 772 S.W.2d 782, 784–785 (Mo.App.1989). This point is denied.

■ Defendant asserts in his eighth point that the trial court erred in refusing to submit a manslaughter instruction based on defendant having "recklessly caused the death of Carla Reynolds". Manslaughter due to recklessness is stated in § 565.024.1(1), RSMo 1986. Such involuntary manslaughter can be a lesser included offense of second-degree murder. § 565.025, RSMo 1986. However, the trial court should only instruct the jury on manslaughter as a lesser included offense if there is an evidentiary basis for convicting the defendant on that charge. *State v. Anding,* 752 S.W.2d 59, 62 (Mo. banc 1988). See also *State v. Martin,* 602 S.W.2d 772 (Mo.App.1980).

Under MAI–CR 3d 313.10, the instruction defendant says should have been given, a person "acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances."

Defendant states in his brief that the instruction was requested because defendant "by his testimony, gave evidence that at the very worst he was guilty of acting rashly or recklessly". Defendant says that his testimony "showed that he lawfully tried to disarm his wife" and that the "worst that can be said is that in reaching for a gun he might have been reckless".

Defendant cites *State v. Singer*, 719 S.W.2d 818 (Mo.App.1986), as being "similar to this where the victim scuffled with the Defendant, and the gun accidentally went off". *Singer* is not in point here. It involved voluntary manslaughter "under the influence of sudden passion arising from adequate cause" as provided in § 565.023.1(1), RSMo 1986. It did not involve the reckless causing of death under the involuntary manslaughter statute, § 565.024, RSMo 1986.

Attempting to legally disarm a person taking threatening action with a gun "does not and cannot form an evidentiary basis for a finding that defendant acted with a conscientious disregard for human life or for a finding that his actions grossly deviated from what a reasonable person would have done under the circumstances". *State v. Skinner*, 734 S.W.2d 877, 882 (Mo.App.1987). Such evidence does not justify submitting involuntary manslaughter due to recklessness. Id. We view *Skinner* as persuasive. This point is denied.

The judgment is affirmed.

FLANIGAN, P.J., and MAUS, J., concur.