**Ronald SKINNER, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 55814.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 20, 1990.

**874**

Richard H. Sindel, Sindel & Sindel, P.C., St. Louis, for appellant.

William L. Webster, Atty. Gen., William J. Swift, Asst. Atty. Gen., Jefferson City, for respondent.

HAMILTON, Presiding Judge.

A jury convicted Ronald Skinner (hereinafter Movant) of murder first degree in violation of Section 565.020 RSMo 1986, and the trial court sentenced him to life imprisonment without the possibility of probation or parole. On appeal, this Court affirmed Movant's conviction. *State v. Skinner*, 734 S.W.2d 877 (Mo.App.1987). Thereafter, Movant filed a Rule 27.26 motion that the trial court denied following an evidentiary hearing. We affirm.

On appeal, Movant asserts that the trial court erred in denying his 27.26 motion because his trial counsel was ineffective, resulting in prejudice to him. Specifically, Movant contends that his trial counsel was ineffective by his failure (1) to object to inadmissible questions and testimony pertaining to prejudicial evidence and evidence of other crimes; (2) to object and to request a mistrial when the prosecutor referred to Movant in closing argument as the "Evil Slayer;" (3) to contact, interview or investigate Sereno Thompson, a witness for the State; and (4) to request an instruction on second degree felony murder.

To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was deficient in that it was unreasonable under prevailing professional norms and movant was thereby prejudiced. *Hamm v. State*, 768 S.W.2d 574, 576 (Mo.App.1989). In reviewing such a claim, courts are not required to consider both the performance prong and the prejudice prong; if a movant fails to satisfy one prong, the court need not consider the other. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). Appellate review of the motion court's ruling in a 27.26 proceeding is limited to a determination of whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 27.26(j) (repealed). Such findings, conclusions, and judgment are deemed clearly erroneous only if, after a review of the entire record, the appellate court is left with a definite and firm impression that a mistake has been made. *Hamm*, 768 S.W.2d at 576.

In his first point, Movant asserts his counsel was ineffective because he failed to object or to move for a mistrial when the prosecutor attempted to introduce evidence of Movant's involvement with drugs and with satanic culture. The motion court found that

counsel's objections were frequent, concise and appropriate. The evidence and testimony adduced went to the State's proof of the knowledge, bias and prejudice of the State's witnesses in favor of the defendant and to the identity of the defendant as the perpetrator of the murder while involved in a drug deal. The Court likewise finds that counsel's failure to object to some of the questions and evidence was a matter of trial strategy which this Court does not question.

An independent review of the record reveals that the motion court's findings were not clearly erroneous.

The trial court admitted evidence regarding Movant's drug involvement. Following the testimony of Janine Green, the murder victim's sister, who was herself wounded at the murder scene, the trial court held an in-chambers conference regarding the prosecutor's intention to use information found in three letters allegedly

authored by Movant. The prosecutor intended to offer portions of one letter, Exhibit 33, to demonstrate Movant was a drug dealer. The trial court overruled defense counsel's objection to the introduction of Exhibit 33 on the grounds that evidence of other drug dealing by Movant was inadmissible.

Thereafter, the prosecutor moved the introduction of Exhibit 34, a second letter, signed "Ron" and "Evil Slayer," that contained further references to drugs as well as racial epithets. The trial court overruled not only defense counsel's initial objection but also his renewed objection to the exhibit. Again over defense counsel's objection, the trial court admitted the third letter, Exhibit C, containing a depiction of a skull and crossbones. At the conclusion of the conference regarding Exhibits 33, 34, and C, defense counsel unsuccessfully moved for a mistrial.

Movant testified in his defense at trial. On direct examination, he admitted both using and selling drugs in the past. He also admitted setting up the drug deal that resulted in the murder with which he was charged.

At the evidentiary hearing on the 27.26 motion, Movant admitted that he wrote the letters marked as Exhibits 33 and 34, although he had denied authorship of them at trial. The motion court found this admission irreparably damaging to Movant's credibility.

At the evidentiary hearing, trial counsel testified to the following trial strategy regarding objections:

The most agonizing problem as a defense attorney is balancing the strategic case against the tactical case. That is balancing the law against—the law case against the jury case. I always feel that if a basic objection has been made that I believe will cover ensuing improper questions as to that same objection I always feel that in the face of the jury it's best not to raise the same objection time after time.

The motion court agreed with counsel's explanation. The mere choice of trial strategy offers no foundation for a finding of ineffective assistance of counsel. *Sanders*, 738 S.W.2d at 858. The findings of the motion court on this issue were not clearly erroneous. Trial counsel did make frequent, appropriate, and concise objections to evidence of the drug involvement of Movant, and considerations of trial strategy determined those situations where no objection was made.

Movant also contends his trial counsel was ineffective for failing to object or to move for a mistrial when the State inquired about satanic worship and attendance at cult meetings.

 First, Movant points to trial counsel's failure to object when the prosecutor questioned Eric Robin (hereinafter Robin), a friend of Movant, regarding a symbol, identified by the prosecutor as an "acid star," drawn on one of the letters allegedly written by Movant. Robin denied the symbol was called an "acid star." The prosecutor inquired whether Robin, Movant, and their friends had tattoos of this "acid star." Trial counsel had earlier unsuccessfully objected to admission of the letters. He had also objected successfully to the prosecutor's questioning of Robin concerning "acid." No certain connection was drawn between this symbol and either drugs or satanic worship. Trial counsel's treatment of this issue was reasonable. Moreover, we note that on direct appeal, this Court held that questions about the star and tattoos were held admissible and not prejudicial. *Skinner*, 734 S.W.2d at 882–83.

 Secondly, Movant asserts his trial counsel failed to object when the prosecutor cross-examined him at trial regarding devil worship and attendance at cult meetings. During this interrogation, Movant repeatedly denied engaging in devil worship. Trial counsel began to make an objection, but then withdrew it. Given that Movant denied satanic worship and no evidence linked him to it, we find no prejudice to Movant and no need for trial counsel to have objected.

In his second point, Movant contends his trial counsel was ineffective for failing to object and to request a mistrial when the

prosecutor referred to him as the "Evil Slayer" during the State's closing argument and when the prosecutor objected during the defense's closing argument and stated his investigation showed that "Evil Slayer" was not a rock group.

During the prosecutor's examination of him, Robin testified that Exhibit 34 contained Movant's handwriting. That exhibit, a letter, was signed "Ron" with the terms "Merciful Fate" and "Evil Slayer" underneath. Movant testified at trial and at the evidentiary hearing that "Merciful Fate" and "Evil Slayer" were rock groups.

■ In his closing argument, the prosecutor stated the following:

MR. MOSS: Let's talk about his letters as Mr. Shaw I'm sure would like to talk about them.

What does he say about these? His letters? Certainly not. Why not? For the same reason he doesn't talk about his gun or the same reason why he avoids being pinned down on this bogus story about getting his hand on the gun.

Why? Because they contain matters that show how he thinks; that show his attitudes; that show he is the, quote, Evil Slayer.

Now you can say and somebody can say that Evil Slayer is a heavy metal rock group. Fine. I defy you to look in Swan's when this case is over and see if Evil Slayer is ever listed as a song or a heavy metal rock group.

Let's assume so that, it is. Why put on there Evil Slayer? Now he didn't say, "That's a heavy metal rock group, one of my favorite groups, and that's why I put it on the bottom of my letter," Did he? Did he say that?

You all know it's his letters. Everything in here indicates it's his letter. Why? Because he knows to admit that this is his letter then he's got to explain Evil Slayer. He put it on there because he pictures himself the Evil Slayer.

He's the tough guy in his group, his retinue, he's the pusher, he's the head man, he's the Evil Slayer, otherwise known as Ron.

Trial counsel's behavior was reasonable in not objecting to the "Evil Slayer" reference during closing argument. The term was already in evidence, as was the fact that Movant had signed his letters "Evil Slayer." To have objected would only have drawn the jury's attention to the phrase.

■ During his closing argument, trial counsel argued, in relevant part:

Now, jurors, at that—Not for one minute do I believe that Ronald Skinner is the evil person—what did the prosecutor tell you? He said, "See if there is such a thing in the records."

Go to any record shop, take my word for this and attend me closely, and you will find in the rock section a group both of those names, Evil Slayer and the other one, because I have checked.

MR MOSS: I object, I object. Wait a minute, wait a minute. That's not in evidence. I have had several people check and came [sic] up with the exact opposite.

MR SHAW: I've checked, jurors.

THE COURT: Ladies and gentlemen, I will say it again to you. You remember the evidence, you take the evidence, disregard the comments.

MR MOSS: There is no evidence of it, therefore I ask that it be stricken.

THE COURT: You will again remember when it was brought up and you can draw whatever inference you want.

MR SHAW: You have heard these— this man tell you that Evil Slayer and the other name was checked.

You'll get to see them when you look at those letters. There are such records and you can find that out.

Movant contends that trial counsel handled this exchange ineffectively. The motion court found otherwise. It stated that "the mutual arguments of the counsel regarding existence of certain rock groups [were] not error, and [were] of no moment in the ultimate outcome; assuming that they were legitimate rock groups, defendant chose to utilize them in closing his letters." We find no error in that assessment. Movant's second point is denied.

In his third point on appeal, Movant asserts trial counsel was ineffective in failing to depose or interview Sereno Thompson, a State's witness, or to request a continuance to do so. He further contends that trial counsel was ineffective in failing to file a motion to order the State to disclose any agreements or "deals" it had with Thompson in exchange for his testimony at Movant's trial.

Thompson was endorsed as a witness the week prior to trial. He testified at trial that he and Movant were housed on the same tier of the St. Louis City Jail. Thompson also testified that Movant confessed to him that he had shot three black people, a man and two women, during the course of a drug deal. Trial counsel cross-examined Thompson about his criminal record, about whether or not he had made any "deal" with the prosecutor and about certain inconsistencies in his story.

The motion court found that, as a matter of trial strategy, trial counsel chose to rely upon cross-examination to disclose whether Thompson was afforded any favorable treatment in return for his trial testimony. In addition, the motion court found that the cross-examination was rigorous and effective and that, from the testimony adduced at trial, no "deal" had been made between the State and Thompson.

Trial counsel will not be deemed ineffective in matters of trial strategy. *Sanders*, 738 S.W.2d at 858. Moreover, the issues of credibility are for the trial court to determine and its determination is entitled to considerable deference. *Stiles v. State*, 766 S.W.2d 753, 754 (Mo.App.1989). In view of these principles and the record before us, we find no error by the motion court.

In his final point on appeal, Movant asserts counsel was ineffective for failing to request a second degree felony murder instruction. In its findings of fact, the trial court found that failure to request such an instruction constituted no ineffective assistance of counsel where Movant was convicted of first degree murder and the State gave no notice of intent to rely on an underlying felony. Additionally, the trial court correctly noted the submission to the jury of an instruction on second degree conventional murder.

In *State v. Griffin*, 756 S.W.2d 475 (Mo. banc 1988), the Supreme Court found no prejudice to the defendant by the trial court's failure to instruct the jury on felony murder second degree where it did instruct the jury on the lesser included offense of second degree conventional murder. The Court stated that it is "a second degree conventional murder instruction, not a second degree felony murder instruction, which sufficiently tests a jury's belief of the crucial facts for a conviction of first degree murder." *Id.* at 485. Point denied.

The judgment of the trial court is affirmed.

CARL R. GAERTNER and STEPHAN, JJ., concur.